# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| RONALD HALME, an individual, | No. 47129-9-II |
| Respondent, | |
| v. | |
| JAMES AND LAURA WALSH, a married couple, KIM AND LORI HASSELBALCH, a married couple, | PUBLISHED OPINION |
| Appellants. | |

MAXA, J. — James and Laura Walsh and Kim and Lori Hasselbalch (collectively, Walsh and Hasselbalch) appeal the trial court's summary judgment order in favor of Ronald Halme. The issue in this appeal is whether a road maintenance agreement applicable to certain subdivided lots creates a homeowners' association and whether the agreement could be amended by a mere majority of lot owners to adopt governing procedures for the subdivision.

The Walshes, the Hasselbalchs, and Halme all own lots in an area comprising nine lots known as Nosko Tract-Phase Two in Clark County. In 1990, the owners of all the lots in Nosko Tract-Phase Two signed a Road Maintenance and Use Agreement (RMA) to build and maintain a private road serving the lots. The RMA required lot owners to make an annual payment to a road maintenance fund. However, the RMA did not provide for the formation of any formal organization of lot owners.

In May 2014, the Walshes and Kim Hasselbalch decided to organize the "Nosko Tract-Phase Two Homeowners Association." They elected a board of directors and officers, adopted amendments to existing covenants, conditions, restrictions and reservations (CC&Rs), and approved bylaws. Halme filed suit against Walsh and Hasselbalch, seeking a declaration that the amendments to the CC&Rs were void and that an entity called the Nosko Tract-Phase Two Homeowners Association did not legally exist. The trial court granted summary judgment in favor of Halme, denied Walsh and Hasselbalch's cross motion for summary judgment, and awarded Halme his reasonable attorney fees.

We hold that (1) based on the language of the RMA, Nosko Tract-Phase Two does not meet the definition of a homeowners' association under RCW 64.38.010(11); and (2) the RMA did not authorize a majority of lot owners in Nosko Tract-Phase Two to amend the RMA to adopt governing procedures. Accordingly, we affirm the trial court's grant of summary judgment in favor of Halme, the denial of Walsh and Hasselbalch's summary judgment motion, and the award of reasonable attorney fees to Halme.

FACTS

*Nosko Tract CC&Rs*

In 1983, the owners of an 80-acre tract of land signed and recorded CC&Rs affecting the use of the property. The CC&Rs required that the land be used for single-family residence purposes, banned commercial activity unless the owner had received written permission of 100 percent of the owners of the plat, and imposed other conditions and restrictions. There is nothing in the CC&Rs that expressly provides for the creation of a homeowners' association.

No. 47129-9-II

*Road Maintenance Agreement*

Over time, the 80-acre plot was divided into two sections commonly known as Nosko Tract-Phase One and Nosko Tract-Phase Two. In June 1990, the owners of the lots in Nosko Tract-Phase Two adopted the RMA, which would "run with the land and shall be binding upon … all owners, their heirs, successors or assigns." Clerk's Papers (CP) at 20. The purpose of the RMA was to accept the dedication of and provide for the maintenance of a private road serving the lots. The RMA provided that the lot owners of Nosko Tract-Phase Two would share proportionately in the costs and expenses of maintaining the road after initial construction by the developer. The RMA established a road maintenance fund and required each lot owner to make an annual contribution to the fund.

Under the RMA, the lot owners have the right to adjust the amount of their annual contribution to the road maintenance fund by an 80 percent vote. There are no other provisions in the RMA that allow for the amendment of any of the RMA's other provisions.

The RMA states that one lot owner will be elected each year to serve as the "manager," whose duties include calling at least two meetings of the owners per year, and contracting for and overseeing authorized repairs and maintenance for the road. All decisions regarding the road require a majority vote. The RMA does not provide for officers, a board of directors, or any other leadership besides the manager. There is nothing in the RMA that expressly provides for the creation of a homeowners' association.

The RMA contains a provision addressing any activity that causes excess damage or deterioration of the road. In addition, the RMA contains a "Rules of Conduct" section for use of the road. CP at 20.

Sometime after the RMA was signed, Nosko Tract-Phase Two split up into eight lots and one lot later was split into two separate lots, bringing the total number of lots in Phase Two to nine.

*Conflict with Halme*

The Walshes own five lots and the Hasselbalchs own one lot in Nosko Tract-Phase Two. Halme also owns one lot. Conflicts have arisen between Halme and the other lot owners. In 2010, Halme built a fence perpendicular to and on both sides of the road going into and out of the subdivision. The fence included a gate that blocked the road when it was closed. In 2011, the Walshes filed a lawsuit against Halme, which resulted in a settlement where Halme agreed to remove the fence and gate.

However, conflicts between Halme and other lot owners continued. Halme kept equipment on his property for his business, including a van, several trailers, electrical wiring and conduits, and other miscellaneous equipment. Halme purportedly asked lot owners to refrain from riding their horses in front of his lot. When neighbors would ride their horses in front of his lot, Halme's son purportedly would purposefully accelerate his all-terrain vehicle engine. In addition, the Walshes and other neighbors accused Halme of purposefully blocking the road by driving very slowly down the road.

*"Homeowners Association" Meeting*

In April 2014, James Walsh sent out notice of a special meeting of the "Nosko Tract-Phase Two Homeowners Association." CP at 81. The meeting's purpose was to elect a board of directors, consider and vote on proposed amendments to the CC&Rs[1], and consider and adopt

---

[1] The notice of special meeting refers to the CC&Rs as the Declaration. CP at 82.

4

bylaws. There is no evidence that anyone believed a Nosko Tract-Phase Two homeowners association existed before this time. And there is no evidence that anyone had ever formed a legal entity under this name.

The meeting took place on May 20. Present were James Walsh, Laura Walsh, and Kim Hasselbalch. Halme did not recognize the existence of the homeowners' association and did not attend the meeting. The people present elected themselves to the board of directors and as officers, adopted amendments to the CC&Rs, approved bylaws, and directed an attorney to draft a schedule of fines and an appeal procedure for anyone accused of violating the CC&Rs.

The amendments to the CC&Rs recited that the Nosko Tract-Phase Two Homeowners Association was formed as a "neighborhood association" in 1983, that the CC&Rs could be amended by a two-thirds majority vote, and that the owners of six of the lots voted to amend the CC&Rs. In addition, the amendments prohibited (1) any commercial activity without the consent of all the lot owners, including home businesses; (2) the use of off-road motorized vehicles on roads or easements; and (3) parking or storing vehicles, boats, trailers, tools, or equipment on any lot unless owned by a current resident of the property. In June 2014, the board of directors held a special meeting and adopted a schedule of fines for violations of rules in the amended CC&Rs. The CC&R amendments adopted by the board of directors were recorded in August 2014.

Immediately thereafter, the association informed Halme that his actions were violations of the amended CC&Rs and warned Halme that if he did not comply with the amended CC&Rs he would start to be fined under the adopted fine schedule.

*Halme Lawsuit*

In September 2014, Halme filed suit against Walsh and Hasselbalch, seeking a declaratory judgment that the amendments to the CC&Rs were void and that the Nosko Tract-Phase Two Homeowners' Association did not legally exist. Walsh and Hasselbalch answered and requested a declaration that Nosko Tract-Phase Two was a homeowners' association under chapter 64.38 RCW and that the association acted properly in amending the CC&Rs and adopting bylaws and other rules.

Halme filed a motion for summary judgment, arguing that (1) Nosko Tract-Phase Two was not a homeowners' association, and (2) Walsh had failed to validly amend the CC&Rs because amendments required a two-thirds majority vote of the owners of both phases of the Nosko Tract. Walsh and Hasselbalch filed a cross motion for summary judgment, arguing (1) the RMA resulted in the formation of a homeowners' association when Chapter 64.38 RCW became effective in 1995, and (2) the homeowners' association had the association powers listed in RCW 64.38.020, including the ability to adopt and amend bylaws, regulate the use of common areas, and to levy reasonable fines pursuant to the bylaws or rules and regulations adopted by the board. Walsh and Hasselbalch eventually conceded that the amendments to the CC&RS were invalid, apparently because a two-thirds vote of all the lots in the Nosko Tract was required to amend the CC&Rs. However, they argued that all of the association's other actions were valid, including adopting bylaws, electing a board of directors, adopting a schedule of fines, and adopting an appeal procedure.

The trial court granted Halme's motion for summary judgment, and denied Walsh and Hasselbalch's cross motion for summary judgment. The trial court ruled that the RMA did not

create a homeowners' association and that the RMA itself did not allow the adoption of bylaws, the election of a board of directors, or other actions.[2]  Walsh and Hasselbalch filed a motion for reconsideration, which the trial court denied.  The trial court awarded Halme reasonable attorney fees of $15,000.

Walsh and Hasselbalch appeal the trial court's summary judgment orders.

## ANALYSIS

A.    STANDARD OF REVIEW

We review a trial court's summary judgment order de novo.  *Rickman v. Premera Blue Cross*, 184 Wn.2d 300, 311, 358 P.3d 1153 (2015).  We view all facts and reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.  *Id.*  If there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, we will affirm the trial court's summary judgment order.  *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013).

The moving party bears the burden of first showing that there is no genuine issue of material fact.  *Lee v. Metro Parks Tacoma*, 183 Wn. App. 961, 964, 335 P.3d 1014 (2014).  " 'A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation.' "  *Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 864-65, 324 P.3d 763 (2014) (quoting *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008)).  If reasonable minds can reach only one conclusion on an issue of fact, that issue can be determined on summary judgment.  *Id.* at 865.

---

[2]  Because Walsh and Hasselbalch conceded that the CC&Rs were not amended properly, the trial court did not address the issue of whether or not the amendments were valid.

B.   CREATION OF A HOMEOWNERS' ASSOCIATION

Walsh and Hasselbalch argue that the RMA created a homeowners' association as defined in RCW 64.38.010(11), which was comprised of the Nosko Tract-Phase Two lot owners. We disagree.

1.   Legal Principles

Homeowners' associations are governed by the Homeowner Association Act (HAA), chapter 64.38 RCW, which provides the powers, duties, and liabilities of homeowners' associations. The legislature enacted the HAA in 1995. LAWS OF 1995, ch. 283. The intent of the HAA "is to provide consistent laws regarding the formation and legal administration of homeowners' associations." RCW 64.38.005.

> RCW 64.38.010(11) defines a "homeowners' association" as
>
> a corporation, unincorporated association, or other legal entity, each member of which is an owner of residential real property located within the association's jurisdiction, as described in the governing documents, and by virtue of membership or ownership of property is obligated to pay real property taxes, insurance premiums, maintenance costs, or for improvement of real property other than that which is owned by the member.

This definition contains three requirements: (1) there must be "a corporation, unincorporated association, or other legal entity," (2) each member of the entity must be an owner of residential real property within the entity's jurisdiction as described in its governing documents, and (3) members must be obligated to "pay real property taxes, insurance premiums, maintenance costs, or for improvement of real property" that the member does not own. RCW 64.38.010(11).

The HAA defines what a homeowners' association is, but it is silent on the method through which an association is created. 33 MATTHEW KING, WASHINGTON PRACTICE: CONSTRUCTION LAW MANUAL § 7:4, at 62 (2008). A common practice for creating a

8

homeowners' association is by forming a non-profit corporation and recording the association's governing documents with the recorder's office. *Id* at 62-63.

2. Statutory Interpretation

Whether the RMA created a homeowners' association depends upon an interpretation of RCW 64.38.010(11). Statutory interpretation is a question that we review de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Id.* at 762. To determine legislative intent, we first look to the plain language of the statute. *Id*. We consider the language of the provision in question, the context of the statute in which the provision is found, and related statutes. *Protect the Peninsula's Future v. Growth Mgmt. Hr'gs Bd.*, 185 Wn. App. 959, 969, 344 P.3d 705 (2015). We give words their usual and ordinary meaning. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

If the plain meaning of a statute is unambiguous, we apply that plain meaning as an expression of legislative intent without considering extrinsic sources. *Jametsky*, 179 Wn.2d at 762. We will not rewrite unambiguous statutory language or add language to an unambiguous statute under the guise of interpretation. *Protect the Peninsula's Future*, 185 Wn. App. at 970. And we "must not add words where the legislature has chosen not to include them." *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003).

3. RCW 64.38.010(11) Requirements

Halme does not appear to dispute that the RMA satisfied the second and third requirements of RCW 64.38.010(11). Each party to the RMA was an owner of residential real property within the RMA's jurisdiction – Nosko Tract-Phase Two. And the parties to the RMA

were obligated to pay maintenance costs on property that they apparently did not own.  Halme

challenges the first requirement, arguing that the RMA did not create an unincorporated

association or some other legal entity.[3]  We agree.

Under RCW 64.38.010(11), only a "corporation, unincorporated association, or other

legal entity" can constitute a homeowners' association.  The RMA clearly did not create a

corporation.  Therefore, the issue here is whether the RMA created an unincorporated association

or other legal entity.

The HAA does not define "unincorporated association" or "legal entity," and no

Washington case addresses the meaning of these terms in the homeowners' association context.

Use of the word "other" before "legal entity" suggests that "unincorporated association" as used

in RCW 64.38.010(11) must be a "legal entity."  However, unincorporated associations generally

are not legal entities.  *Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*, 168

Wn. App. 56, 74, 277 P.3d 18 (2012).  Therefore, RCW 64.38.010(11) seems to require

something more than a "typical" unincorporated association.

An unincorporated association generally is formed by the voluntary action of a number of

individuals in associating themselves together under a common name for the accomplishment of

a lawful purpose.  6 AM. JUR. 2D *Associations and Clubs* § 1 (2008).  It is "a body of individuals

acting together for the prosecution of a common enterprise without a corporate charter but upon

methods and forms used by corporations."  *Id.*

---

[3] In their reply brief, Walsh and Hasselbalch make two motions to strike most of Halme's brief because it fails to cite legal authority to support Halme's arguments.  Pursuant to RAP 17.4(d), "[a] party may include in a brief only a motion which, if granted, would preclude hearing the case on the merits."  Walsh and Hasselbalch's motions to strike would not preclude hearing this appeal.  Therefore, we deny the motions to strike.

The provisions of the RMA compel the conclusion that the RMA did not create an unincorporated association or other legal entity. Most important, the RMA does not purport to create any type of group or organization. The RMA is a covenant that runs with the lots of the Nosko Tract-Phase Two and provides for the dedication of a private road to those lots and addresses the maintenance and use of the road. Under the RMA, the Nosko Tract-Phase Two lot owners must work together toward a common purpose. But there is no identification of any type of a formal organization that exists independent of the individual lot owners.

Further, the RMA provides very little organizational structure. There are no articles of incorporation, charters, bylaws, policy manuals, or similar documents that address the governance of an organization. The RMA does not provide for a board of directors or officers. The RMA does provide for the election of a manager who is authorized to contract for repairs and maintenance. But there are no provisions stating that the manager has any authority regarding any formal organization.

Nothing in the RMA suggests that any type of formal organization was being formed when the RMA was executed. Accordingly, we hold that the RMA did not create the type of unincorporated association or other legal entity required under RCW 64.38.010(11).[4]

C.     AUTHORIZATION OF RMA AMENDMENTS

Walsh and Hasselbalch argue that even if Nosko Tract-Phase Two is not a homeowners' association, a majority of the lot owners in Nosko Tract-Phase Two have the authority to amend

---

[4] Walsh and Hasselbalch argue that the lot owners formed a homeowners' association by implication. He relies on two Colorado cases: *Evergreen Highlands Ass'n v. West*, 73 P.3d 1, 8 (Colo. 2003) and *Hiwan Homeowners Ass'n v. Knotts*, 215 P.3d 1271, 1273 (Colo. App. 2009). These cases are not applicable here because of differences in the Colorado statutory language.

the RMA to provide internal governing procedures – including electing a board of directors and officers and adopting a schedule of fines and an appeal procedure. We disagree.

1.  Legal Principles

Restrictive covenants are enforceable promises regarding the use of land. *Viking Props., Inc. v. Holm*, 155 Wn.2d 112, 119, 118 P.3d 322 (2005). Because the RMA requires lot owners to make contributions to a maintenance fund, it can be classified as a restrictive covenant.

The interpretation of a restrictive convent is a question of law, and we apply the rules of contract interpretation in determining the meaning of a restrictive covenant. *Wilkinson v. Chiwawa Cmtys. Ass'n*, 180 Wn.2d 241, 249, 327 P.3d 614 (2014). The primary objective in contract interpretation is determining the drafter's intent. *Id.* at 250. In determining the drafter's intent, we give covenant language its ordinary and common use and will not construe a term in such a way so as to defeat the plain and obvious meaning. *Id.*

Amendments to covenants are permissible. *Ebel v. Fairwood Park II Homeowners' Ass'n*, 136 Wn. App. 787, 792, 150 P.3d 1163 (2007). However, in order for an amendment to be valid, the amendment must be adopted according to the procedures set up in the covenants and it must be consistent with the general plan of the development. *Id.* at 792-93. An amendment may not create a new covenant that has no relation to the existing covenants. *Id.* at 793.

2.  Language of RMA

There is no language in the RMA expressly stating that the Nosko Tract-Phase Two lot owners can amend its provisions by majority vote. The RMA provides that lot owners will make decisions regarding the extent and nature of any road maintenance by majority vote, but that

provision has nothing to do with amending the RMA. The RMA also provides that the lot owners can adjust the amount of the annual contribution to the road maintenance fund by 80 percent vote, but that provision does not allow the amendment of any other RMA terms.

Walsh and Hasselbalch argue that the first paragraph of the RMA authorizes lot owners to adopt regulations to administer the RMA:

> The private road herein dedicated is to be used and administered under such regulations consistent with other conditions set forth in this instrument *as may, from time to time hereafter, be established by the owners of The Nosko Tract-Phase Two* for the purpose of safe-guarding the road/roads or improvements thereon from damage or deterioration, and for the further purpose of protecting the residents of The Nosko Tract – Phase Two from any uses or conditions in or upon said private road or property which are, or may be, detrimental to the amentities [sic] of the neighborhood.

CP at 17 (emphasis added) (capitalization omitted). This language implies that the lot owners may be able to adopt "conditions" for the purpose of safe-guarding the road or protecting residents from detrimental uses, but this provision does not imply that the lot owners have the authority to adopt regulations to administer the RMA.

Further, even if the RMA did authorize amendments, the RMA does not provide that those amendments could be adopted by majority vote or even an 80 percent vote. In the absence of language providing how the RMA could be amended, the only reasonable interpretation of the first paragraph is that *all* of the lot owners would have to agree to an amendment.[5] *See Wilkinson*, 180 Wn.2d at 256-57.

---

[5] Walsh argues that their amendments are necessary because there is no mechanism in the RMA to enforce its rules of conduct. However, Walsh ignores the attorney fee provision in the RMA that provides "[t]he prevailing party in any suit or action to enforce this agreement shall be awarded reasonable attorney's fees and the reasonable costs of prosecuting or defending said suit or action." CP at 20. In addition, the RMA allows the road manager to require parties that damage the road to immediately repair the road at their personal expense, or sue them if lot

Amendments to a covenant must be adopted according to the procedures set up in the covenants. *Ebel*, 136 Wn. App. at 792-93. Here, nothing in the RMA allows its terms to be amended by majority vote. Therefore, we hold that the RMA did not authorize Walsh and Hasselbalch to adopt amendments to create governing procedures for the RMA.[6]

D.    ATTORNEY FEES

The trial court awarded Halme his reasonable attorney fees under attorney fee provisions in the RMA. Walsh and Hasselbalch do not disagree that the prevailing party is entitled to recover attorney fees under the RMA. Because Halme was the prevailing party in the trial court, we affirm the trial court's award of his reasonable attorney fees.

Halme also requests reasonable attorney fees on appeal under RAP 18.1, which allows recovery of attorney fees if applicable law permits. Here, Halme identifies the CC&Rs and RMA provisions allowing a party to recover attorney fees for bringing an action to enforce them. Again, Walsh and Hasselbalch do not disagree that the prevailing party is entitled to recover attorney fees under the RMA. Because Halme is the prevailing party, we award him reasonable attorney fees on appeal.[7]

---

owners do not comply. These provisions allow the road manager and any other lot owner to enforce the RMA in court.

[6] Halme also argues that the record demonstrates that Walsh and Hasselbalch originally intended to amend the CC&Rs, rather than attempting to amend the RMA. Because we hold that the RMA did not authorize Walsh and Hasselbalch's amendments, we do not address this issue.

[7] Walsh and Hasselbalch also request reasonable attorney fees on appeal. However, they are not entitled to recover attorney fees because they are not the prevailing parties on appeal.

No. 47129-9-II

We affirm the trial court's grant of summary judgment in favor of Halme, denial of Walsh and Hasselbalch's summary judgment motion, and the award of reasonable attorney fees to Halme.

_____
MAXA, J.

We concur:

_____
WORSWICK, J.

_____
JOHANSON, C.J.