# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SUNRISE RIDGE/THE HIGHLANDS AT SOMERSET HILL HOMEOWNERS ASSOCIATION, a Washington Non-Profit Corporation, | No. 51091-0-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| CITY OF TUMWATER, a Washington Municipal Corporation, and BRETT and KARA DURBIN, | |
| Respondents, | |
| v. | |
| RAMESH and SHA YESTEH NOORASA, PATRICK and PATRICIA QUINN, ERIC TRIMBLE and SYDNE COGBURN, EDWARD and CHRISTINE WARNOCK, ERIC AGAR and KRISTEN GERINGER, LUAN and QUYNH-NHU VU, HEIDI and PASQUALE ALGIERE, HOON LONG, and MELISSA DENTON, JAMES MARRA and MARY DESSEL, CHARLES and ARLENE MINDEMANN, SIOBHAIN T. O'CONNELL LIVING TRUST, CHRISTINE and BRYAN MCNAMARAR, JEROME and WENDEE DETERMAN, KAREN JOST, STEVEN and NICOLE CSERFOI, JASON HODGES, JON ANTHONY and LISA EPPERSON, SEAN EASTHAM and MELANIE SMITH, SANJEEV AGNISH, DENISE BEST, MOHSIN and KATIE RAZA, STEPHEN SP ARREL and REBECCA PIEPER-SP ARRELL, and PETER KUCERA, | |
| Third Party Defendants. | |

MAXA, C.J. – The Sunrise Ridge/The Highlands at Somerset Hill (SR/HSH) homeowners association (HOA) appeals the trial court's order granting the City of Tumwater's summary judgment motion and ruling that the SR/HSH HOA was solely responsible for the maintenance of a stormwater drainage pond. The SR/HSH HOA claims that the Vistas homeowners association (Vistas HOA)[1] should be responsible for the maintenance of the pond, which exclusively serves the Vistas subdivision even though it is located on the SR/HSH HOA's property.

We hold that (1) both the Vistas HOA and the SR/HSH HOA have a shared obligation to maintain the stormwater drainage pond, referred to as cell 2; and (2) the Land Use Petition Act (LUPA), chapter 36.70C RCW, does not apply because the SR/HSH HOA's claim is not an appeal of a land use decision. We decline to determine how the cell 2 maintenance obligation should be allocated between the Vistas HOA and the SR/HSH HOA, and instead we remand for the trial court to make this determination.

Accordingly, we reverse the trial court's order granting summary judgment in favor of the City and remand for further proceedings.

FACTS

*Vistas Development*

Jackson Development, Inc. filed an application for a preliminary plat for the Vistas subdivision. The City approved the application in 1991. A condition of approval for the preliminary plat required the developer to construct a stormwater detention facility to serve the

---

[1] The record suggests that the Vistas homeowners association is not a legal entity. Nevertheless, we refer to the owners of the lots in the Vistas subdivision collectively as the Vistas HOA.

2

subdivision.  Another condition was that the developer acquire easements for any offsite storm drainage facilities.

Jackson Development apparently transferred ownership of the Vistas development to Hodges Homes, Inc., while retaining ownership of the surrounding property.  In July 1992, Jackson Development granted to Hodges Homes a perpetual easement for installing, constructing, operating and maintaining a stormwater detention facility.  The easement was filed under auditor's file number 9208190116.  The easement burdened what was referred to as Tract F, ownership of which remained with Jackson Development.  Jackson Development executed a nearly identical easement in August 1992, which revised the legal description of the property.  That easement was filed under auditor's file number 9208190117.  The easements provided that Hodges Homes would be responsible for maintenance costs.

At some point, Hodges Homes or a successor constructed a stormwater drainage pond, cell 2, on Tract F.  Cell 2 was on the other side of Crosby Boulevard from the Vistas subdivision.  On the subsequent plat of that property, Tract F was divided into Tract T and Tract U.  Cell 2 is located on Tract T.

The City approved the final plat for the Vistas subdivision in early 1995.  The plat map showed a storm drainage easement area across Crosby Boulevard from the subdivision.  A note on the final plat stated, "The storm drainage facilities located in the easement area are to be maintained by the homeowner's association as referenced in the maintenance agreement attached to the covenants."  Clerk's Papers (CP) at 108.

Richard Nevitt, identified in the Vistas covenants, conditions and restrictions (CC&Rs) as the developer of the Vistas subdivision, executed a stormwater maintenance agreement with the City in March 1995.  The agreement stated that Nevitt had constructed stormwater facilities on

3

the Vistas subdivision property, and required Nevitt and his successors to implement a "stormwater facility maintenance program" attached to the agreement. CP at 248.

The Vistas CC&Rs, recorded in 1997, noted the Vistas HOA's responsibility to maintain the stormwater facility in the CC&Rs. The CC&Rs acknowledged in section 1.4 that a note on the face of the plat stated that the City held the Vistas HOA responsible to maintain the stormwater facilities in the easement recorded under auditor's file number 9208310223. Section 8.1 of the CC&Rs stated that the Vistas HOA "shall have the responsibility to maintain the stormwater facilities described in Section 1.4." CP at 267. However, section 8.1 also stated, "This maintenance responsibility shall terminate in the event the City of Tumwater, or some other entity approved by the City of Tumwater, agrees to assume maintenance responsibility for the stormwater facilities." CP at 267.

*SR/HSH Development*

In 1994, Jackson Development transferred the property that included Tract F to Graoch Associates #8 Limited Partnership. The transfer was subject to the easement Jackson Development granted to Hodges Homes for the stormwater facilities.

Graoch platted the SR/HSH development in three phases between 2003 and 2006. At some point, Graoch constructed cell 1 on Tract U and cell 3 on Tract T. Graoch also reconstructed and enlarged cell 2, but did not change its purpose. Cell 2 continued to be used exclusively to service the Vistas subdivision – no stormwater drained from the SR/HSH development into cell 2.

In July 2003, the City approved Graoch's phase I plat. A note on the plat stated that stormwater drainage facilities shall be maintained by the SR/HSH HOA as referenced in a maintenance agreement recorded under a specific auditor's file number. The maintenance

agreement, which Graoch had executed in June 2003, stated that Graoch had constructed stormwater facilities on what was referred to as Parcel B and required Graoch and its successors to implement the stormwater maintenance program located in the City's Drainage and Erosion Control Manual. The plat showed Parcel B as including the area previously referred to as Tract F and later referred to as Tract T and Tract U.

The City approved Graoch's phase II plat in June 2004. Again, a note on the plat contained language identical to the note on the phase I plat stating that stormwater drainage facilities shall be maintained by the SR/HSH HOA as referenced in the same recorded maintenance agreement.

The City approved Graoch's phase III plat for the SR/HSH development in May 2006. The notes and conditions of approval are listed on page 8 of the plat. Note 2 stated, "Tracts 'L' through 'Z' shall be owned and maintained" by the SR/HSH HOA. CP at 328. Note 4 contained the same language as the phase I and phase II plats stating that storm drainage facilities shall be maintained by the SR/HSH HOA as referenced in a maintenance agreement, but left blank the auditor's file number of the agreement. Note 6 stated, "All *drainage easements*, swales, *ponds*, conveyance ditches, *storm facilities*, and all other appurtenances shall be maintained" by the SR/HSH HOA. CP at 328 (emphasis added).

The plat did not show or reference any specific ponds or storm facilities. But on a map showing Tract T, the plat specifically referenced the 1992 stormwater drainage easement Jackson Development granted to Hodges Homes: "Storm drainage easement per auditor's file no. 9208190116 (to be relinquished upon recording of this plat)."[2] CP at 327.

---

[2] There is no indication in the record that Vistas relinquished the easement, and Vistas has continued using cell 2.

Graoch also executed a new stormwater maintenance agreement with the City in May 2006. The agreement stated that Graoch had constructed storm water facilities on the SR/HSH development and required Graoch and its successors to implement the stormwater maintenance program located in the City's Drainage and Erosion Control Manual. The agreement also stated that the City could give Graoch notice of specific maintenance and repair work and require Graoch to complete the work within a reasonable time.

The maintenance agreement also contained a detailed provision about the liability of SR/HSH as successor to Graoch. The president of the SR/HSH HOA signed the maintenance agreement.

The SR/HSH CC&Rs noted the SR/HSH HOA's responsibility to maintain the stormwater ponds. The original CC&Rs, recorded in 2003, stated that the SR/HSH HOA was responsible for "all costs, expenses, obligations, and liabilities to preserve, repair, maintain, replace, and restore . . . the Drainage Facilities (including the Ponds)." CP at 306. The CC&Rs defined "Ponds" as "any one or more of the three storm water detention ponds located on the Property, and all facilities, equipment and improvements related thereto, which are located in those areas designated on the face of the Plat as Tracts 'A,' 'B,' and 'G.' " CP at 299. In 2006, the SR/HSH CC&Rs amended the definition of "Ponds" to add tracts "M," "T," and "U."

In 2010, Graoch conveyed title to the SR/HSH development property, including Tract T, to the SR/HSH HOA.

*Declaratory Judgment Action*

In 2014, the City ordered the SR/HSH HOA to perform maintenance on the stormwater drainage facilities as required by the stormwater maintenance agreement. The SR/HSH HOA responded that the Vistas HOA was responsible for maintaining cell 2, and that the SR/HSH

6

HOA would not contribute to the maintenance of that drainage pond. The City initially acknowledged that the Vistas HOA had a maintenance responsibility for the functional aspects of cell 2. But the City subsequently assigned to the SR/HSH HOA all responsibility to maintain cell 2.

The SR/HSH HOA filed a declaratory judgment action against the City seeking a declaration that the SR/HSH HOA should not be responsible for paying the costs of maintaining cell 2. The City filed a third party complaint against all of the owners of lots in the Vistas subdivision. Lot owners Brett and Kara Durbin appeared in the trial court and are parties to this appeal. The parties filed cross-motions for summary judgment.

The trial court entered an order granting the City's summary judgment motion, denying the SR/HSH HOA's summary judgment motion, and ruling that the SR/HSH HOA should be responsible for the full cost of maintaining cell 2. The SR/HSH HOA appeals the trial court's order.

ANALYSIS

A.    STANDARD OF REVIEW

We review a trial court's summary judgment order de novo. *Halme v. Walsh*, 192 Wn. App. 893, 901, 370 P.3d 42 (2016). We view all facts and reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* A genuine issue of material fact exists if reasonable minds could disagree on the facts that determine the outcome of the litigation. *Id.* The moving party bears the burden of proving that there is no genuine issue of material fact. *Id.*

B.    OBLIGATION TO MAINTAIN STORMWATER FACILITIES

The SR/HSH HOA argues that the trial court erred in granting the City's summary judgment motion and ruling that the SR/HSH HOA should be responsible for the cost of maintaining cell 2.  The SR/HSH HOA claims that the Vistas HOA, not the SR/HSH HOA, is obligated to maintain cell 2 or that the parties have a shared obligation.  We hold that both the SR/HSH HOA and the Vistas HOA have a shared obligation to maintain cell 2.

1.    Vistas HOA Maintenance Obligation

SR/HSH argues that Vistas has an obligation to maintain cell 2 under the plat for the Vistas subdivision, the related stormwater maintenance agreement, and TMC 13.12.020(D)(1).  We agree.

a.    Vistas Subdivision Plat/Maintenance Agreement

A note on the final plat for Vistas stated, "The storm drainage facilities located in the easement area are to be maintained by the homeowner's association as referenced in the maintenance agreement attached to the covenants."  CP at 108.  The plat map showed a storm drainage easement area across Crosby Boulevard from the subdivision that included what now is referred to as Tract T, where cell 2 is located.  The referenced maintenance agreement required the Vistas subdivision developer and his successors to implement an attached "stormwater facility maintenance program."  CP at 248.

RCW 58.17.170(3)(a)[3] states that a subdivision "shall be governed by the terms of approval of the final plat."  A municipality must enforce these conditions.  *See Jones v. Town of Hunts Point*, 166 Wn. App. 452, 457-58, 272 P.3d 853 (2011).  And Tumwater Municipal Code

---

[3] RCW 58.17.170 was amended in 2017.  LAWS OF 2017, ch. 161, § 2.  Since those amendments do not affect our analysis, we cite to the current version of the statute.

(TMC) 17.02.110 requires the City to comply with the terms of RCW 58.17. In addition, the parties do not dispute that the maintenance agreement constitutes a binding, enforceable contract between Vistas as the successor to the subdivision developer and the City. TMC 13.12.020(D)(2)(c) states that maintenance agreements between the City and property owners remain in effect for the life of the development unless the City assumes responsibility for such maintenance.

The City makes three arguments to support its position that the Vistas subdivision plat *no longer* obligates Vistas to maintain cell 2. First, the City points to the language of the Vistas CC&Rs, which stated that the Vistas HOA's obligation to maintain stormwater facilities "shall terminate in the event the City of Tumwater, or some other entity approved by the City of Tumwater, agrees to assume maintenance responsibility for the stormwater facilities." CP at 267. But the City cites no authority for the proposition that a homeowners association in its CC&Rs can unilaterally extinguish an obligation required in a plat condition and assumed in a binding contract.

Second, the City references the SR/HSH phase III plat map, which stated when identifying the Vistas HOA's storm drainage easement, "(to be relinquished upon recording of this plat)." CP at 327. But there is no indication that this easement has been relinquished; the Vistas subdivision still drains its stormwater into cell 2. And the City does not explain how a notation on a map in one developer's plat can extinguish a condition in another developer's plat or an obligation assumed in a binding contract. In addition, the record does not show that the City has taken any steps to alter the plat conditions for the Vistas subdivision or rescind the related maintenance agreement.

Third, the City emphasizes that the developer of the SR/HSH subdivision reconstructed cell 2. The City claims that it would make no sense to require the Vistas HOA to maintain the reconstructed stormwater facility. But the Vistas subdivision plat and related maintenance agreement do not state that the Vistas HOA's maintenance obligation would terminate if cell 2 was reconstructed.

We hold that the Vistas HOA continues to have an obligation to maintain cell 2 under the conditions on the Vistas subdivision plat and the related maintenance agreement.

### b. TMC 13.12.020(D)(1)

Even apart from the Vistas subdivision plat and related maintenance agreement, TMC 13.12.020(D)(1) addresses the maintenance of stormwater drainage systems:

> a. Any person(s) holding title to a premises *for which a stormwater drainage system* and BMPs[4] *have been required* shall be responsible for the continual operation, maintenance and repair of said stormwater facilities and BMPs in accordance with the provisions of this chapter.
>
> b. For privately maintained stormwater facilities, the maintenance requirements specified in this chapter, including the manual, shall be enforced against the owner(s) of *the property served by the stormwater facility*.

(Emphasis added.)

Regarding subsection (a), the City required the Vistas developer to construct cell 2 as a condition of approval of the Vistas subdivision plat. The premises for which cell 2 was required is the Vistas subdivision. And the Vistas HOA (or the individual lot owners) hold title to those premises. Therefore, Vistas has an obligation under this ordinance to maintain cell 2.

---

[4] "BMPs" refers to best management practices. TMC 13.12.010(B).

Regarding subsection (b), Vistas and SR/HSH both executed maintenance agreements that applied to cell 2. But only the Vistas subdivision property is served by cell 2. Therefore, Vistas has an obligation under this ordinance to maintain cell 2.

The City argues that TMC 13.12.020(D)(1)(a) imposes a maintenance obligation on the SR/HSH HOA because the SR/HSH HOA is the person holding title to cell 2. But the ordinance imposes a maintenance obligation on the person holding title to the *premises for which the stormwater drainage system was required*, not holding title to the stormwater drainage system itself.

The City also suggests that because the SR/HSH developer reconstructed cell 2, the SR/HSH subdivision is now served by cell 2 as required in TMC 13.12.020(D)(1)(b). But nothing in the record shows why the SR/HSH developer reconstructed cell 2 or suggests that cell 2 somehow serves the SR/HSH subdivision. And even if the SR/HSH subdivision is served by cell 2, there is no dispute that cell 2 also serves the Vistas subdivision and therefore would obligate Vistas to provide maintenance along with the SR/HSH HOA.

The Durbins argue that TMC 13.12.020(D)(1) does not apply because that provision was enacted in 2010, and Vistas had a vested right to rely on stormwater management rules in place at the time of its final plat in 1995. They cite *Snohomish County v. Pollution Control Hearings Board*, 187 Wn.2d 346, 368, 386 P.3d 1064 (2016). However, *Snohomish County* involved applying new stormwater regulations to the construction of projects that previously had been approved but for which construction would not be started until a later date. *See id.* at 353-54. The court held that vesting statutes did not apply to certain stormwater regulations. *Id.* at 374. The court did not address completed developments like the Vistas subdivision. And the court did

not hold or even suggest that completed developments were exempt from all subsequent ordinances. Therefore, we reject the Durbins' argument.

We hold that the Vistas HOA has an obligation to maintain cell 2 under TMC 13.12.020(D)(1)(a) and (b).

2. SR/HSH HOA Maintenance Obligation

Concluding that the Vistas HOA has an obligation to maintain cell 2 does not end the inquiry. The next question is whether the SR/HSH HOA also has a maintenance obligation. The City argues and the trial court found that the SR/HSH HOA has an obligation to maintain cell 2. We agree.

Initially, the fact that the Vistas HOA has an obligation to maintain cell 2 does not preclude a finding that the SR/HSH HOA also has a maintenance obligation. TMC 13.12.020(D)(1) does not state that *only* the owner of property served by the stormwater facility has a maintenance obligation. The Vistas subdivision plat and maintenance agreement also do not impose an exclusive maintenance obligation.

The City focuses on the plat for phase III of the SR/HSH development. Note 4 on that plat stated that storm drainage facilities shall be maintained by the SR/HSH HOA as referenced in an unidentified maintenance agreement. The agreement Graoch subsequently executed stated that Graoch had constructed stormwater facilities on the SR/HSH development and required Graoch and its successors to implement the stormwater maintenance program located in the City's Drainage and Erosion Control Manual. Note 6 on the plat stated, "All *drainage easements*, swales, *ponds*, conveyance ditches, *storm facilities*, and all other appurtenances shall be maintained" by the SR/HSH HOA. CP at 328 (emphasis added).

12

As with the Vistas subdivision plat, the SR/HSH subdivision is governed by the plat conditions and those conditions are enforceable by a municipality. RCW 58.17.170(3)(a); *Jones*, 166 Wn. App. at 457-58. And as with the Vistas maintenance agreement, the SR/HSH maintenance agreement constitutes a binding, enforceable contract between the SR/HSH HOA as the successor to the subdivision developer and the City that remains in effect for the life of the development. TMC 13.12.020(D)(2)(c).

The SR/HSH HOA does not dispute that it has some maintenance obligation under the phase III plat. Its position is that both the Vistas HOA and the SR/HSH HOA have a shared maintenance responsibility for all of the stormwater facilities on Tract T, but that each is required to maintain their own drainage systems.

The SR/HSH HOA argues that note 6 on the phase III plat should be interpreted as applying only to stormwater facilities that benefit the SR/HSH subdivision or are appurtenant to that subdivision. Under this interpretation, the SR/HSH HOA would not have an obligation to maintain cell 2 because cell 2 benefits only Vistas. However, the plat's plain language refers to *all* drainage easements, ponds, and storm facilities, and does not state that the SR/HSH HOA has an obligation to maintain only the drainage easements, ponds, and storm facilities that benefit the SR/HSH subdivision. Similarly, the SR/HSH maintenance agreement applies broadly to "storm water facilities" on the SR/HSH property, CP at 336, and does not state that the SR/HSH HOA has an obligation to maintain only the stormwater facilities that benefit the SR/HSH subdivision.[5]

---

[5] The City argues that the CC&Rs establish the SR/HSH HOA's obligation to maintain cell 2. The City apparently claims that the City can enforce the CC&R provision regarding pond maintenance against the SR/HSH HOA, but cites no authority for that proposition. Because we hold that the phase III plat and the maintenance agreement impose a maintenance obligation on the SR/HSH HOA, we need not address this issue.

We hold that SR/HSH has an obligation to maintain cell 2 under the conditions on the SR/HSH subdivision plat and the related maintenance agreement.

3.      Summary

The trial court ruled that the SR/HSH HOA "should be responsible for the cost of maintaining Cell 2." CP at 385. Although this ruling did not expressly reference Vistas, the clear meaning of the ruling is that *only* the SR/HSH HOA and not the Vistas HOA has an obligation to maintain cell 2.

As discussed above, *both* Vistas and SR/HSH have a shared obligation to maintain cell 2. Therefore, we hold that the trial court erred in making this ruling and in granting the City's summary judgment motion.

C.      ALLOCATION OF MAINTENANCE OBLIGATION

The SR/HSH HOA argues that even if both Vistas and SR/HSH have an obligation to maintain cell 2, this court should hold that Vistas has the primary obligation. The SR/HSH HOA states:

> Even if you assume arguendo, however, that the SR/HSH HOA has a duty of maintenance regarding Cell 2 that does not necessarily relieve Vistas of its primary duty to maintain its own storm water facility. It should be recognize [sic] that both Vistas and the SR/HSH HOA owe a duty to maintain the storm water facilities that serves [sic] them as provided by the city ordinance. The duty to maintain the storm water facilities on Lot "T" do [sic] not need to be interpreted as being mutually exclusive. The creditable approach is to therefore recognize that Vistas has the primary responsibility for the maintenance and repair of Cell 2 and the SR/HSH HOA is responsible for the maintenance and repair of Cells 1 and 3.

Br. of Appellant at 13. The City does not address allocation of a shared responsibility.

We decline to rule on the allocation of the cell 2 maintenance obligation between the Vistas HOA and the SR/HSH HOA. Because the trial court ruled that the SR/HSH HOA should

have the maintenance responsibility, the court did not address this issue. We remand for the trial court to determine how the parties' concurrent maintenance obligations should be allocated.

D.      APPLICABILITY OF LUPA

The City and the Durbins argue that the SR/HSH HOA's attempt to avoid the maintenance obligation imposed by the SR/HSH subdivision plat essentially is an attempt to rewrite the terms of the plat, which could only be accomplished through a LUPA appeal. They note that any LUPA appeal at this time would be untimely. We disagree that LUPA applies to the SR/HSH HOA's declaratory judgment action.

LUPA establishes the exclusive means of judicial review of land use decisions. RCW 36.70C.030. Under RCW 36.70C.040, a petitioner must file a land use petition in superior court within 21 days of the land use decision. However, if a party's claim is not based on an appeal of a land use decision, LUPA does not apply. *Cave Properties v. City of Bainbridge Island*, 199 Wn. App. 651, 656, 401 P.3d 327 (2017). RCW 36.70C.020(2) defines land use decision as "a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination." This definition includes applications for project permits or government approval, such as plats. RCW 36.70C.020(2)(a).

The City and the Durbins argue that summary judgment in favor of SR/HSH would amount to a revision of the unambiguous terms of the SR/HSH plat. They argue that the final plat was approved in 2006, and therefore LUPA bars the petition as untimely. However, on its face, SR/HSH's claim is not an appeal of a land use decision. And the SR/HSH HOA does not challenge the imposition of the conditions of the SR/HSH subdivision plat. Instead, the SR/HSH HOA's claims primarily focus on Vistas' obligations, not its own. Accordingly, we hold that LUPA does not apply.

15

No. 51091-0-II

CONCLUSION

We reverse the trial court's order granting the City's summary judgment motion and remand for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, C.J.

We concur:

_____
WORSWICK, J.

_____
MELNICK, J.