## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| AMOS TSIKAYI and CHRIS TSIKAYI, | No. 57533-7-II |
| Respondents, | |
| v. | UNPUBLISHED OPINION |
| CHRISTOPHER PAT KRAKE and LESLIE JEANNE KRAKE, | |
| Appellants. | |

CHE, J. — Christopher Pat Krake[1] and Leslie Jeanne Krake appeal a judgment awarding damages to Amos Tsikayi and Chris Tsikayi for timber trespass under RCW 64.12.030.[2]

The Krakes and the Tsikayis are residents in the same homeowners' association (HOA) and share a property line, which runs parallel to a row of Leyland Cypress trees. Some of the trees are located entirely on the Tsikayis' property, but some straddle the common property line. The Krakes removed approximately the top third of the trees. Subsequently, the Tsikayis brought an action for timber trespass under RCW 64.12.030. The trial court granted partial summary judgment against the Krakes, concluding that there was no genuine issue of material fact regarding injury to the trees. At trial, the trial court denied the Krakes' motion for a directed

---

[1] Throughout the record, Christopher Krake is referred to as "Pat Krake."

[2] We will refer to the couples collectively by their last names and to the individuals by their first and last names.

verdict on damages. The jury returned a verdict for the Tsikayis, and the trial court entered judgment for treble damages against the Krakes.

The Krakes argue that the trial court erred when it granted partial summary judgment for the Tsikayis on the element of injury and denied the Krakes' motion for a directed verdict on the element of damages. We hold that (1) there is no genuine issue of material fact that the Krakes' conduct did "otherwise injure" the trees under RCW 64.12.030 and that they lacked lawful authority to unilaterally cut off the top third of boundary trees as common owners; and (2) substantial evidence sustained the damages verdict against the Krakes.

Accordingly, we affirm the trial court's grant of partial summary judgment against the Krakes and its denial of the Krakes' motion for a directed verdict.

FACTS

The Krakes and the Tsikayis are neighbors and members of the same HOA. The Krakes and the Tsikayis share a property line, which runs parallel to a row of Leyland Cypress trees. The former owners of the Tsikayis' property planted the trees on the property. Since then, some of the tree trunks have grown so wide that a portion of the trunks have crossed the property line onto the Krakes' property. Around 2005 and again in 2013, the trees were reduced in height.[3]

_____

[3] The parties appear to have used the terms topping and reduction interchangeably based on their opinion of what occurred. The Tsikayis' expert, Walter Knapp, defined "crown reduction" as a pruning technique used to reduce the height of the tree crown without severely damaging the tree. According to Knapp, the crown refers to the area of foliage in the tree, top to bottom.

In early 2015, Pat Krake asked Amos Tsikayi to "top"[4] the trees on the Tsikayis' property that the Krakes felt were impairing their view. Amos Tsikayi told Pat Krake that if the Krakes were willing to pay for the topping, Amos would consult with his wife, Chris Tsikayi, to see if she would agree to any treetop removal.

On August 27, 2016, Leslie Krake sent Amos Tsikayi an e-mail expressing the Krakes' intent to cut the tops of the trees the next day. Amos Tsikayi responded that he was out of town and asked the Krakes to work with Chris Tsikayi "to come to an agreement on the amount of topping." Clerk's Papers (CP) at 36. Amos added, "Just to be clear, I have not requested nor have I approved my trees be topped. As such, I reserve the right to seek legal remedies should there be any negative outcomes." CP at 36. Leslie Krake responded, "Since the trunks of the trees have grown onto our property, as your surveyor confirmed, the law states that we can trim them without your permission as long as we are paying for it and we don't harm them." CP at 36. On behalf of the Krakes, workers proceeded to cut approximately nine feet from the tops of the trees, bringing them from 31 feet to approximately 22 feet in height, despite Chris Tsikayi repeatedly requesting the Krakes to cease removing the treetops during the removal process.

The Tsikayis brought an action for timber trespass under RCW 64.12.030, which allows a party to recover treble damages for a direct interference with a party's property interest in trees.

A.    *Partial Summary Judgment*

The Tsikayis moved for partial summary judgment on the issue of liability for the timber trespass and treble damages.

---

[4] Knapp defined tree topping as the practice of removing entire tops of trees, which leaves behind large wounds that may become entry points for decay, which can affect the long-term health and stability of trees.

The Tsikayis hired Walter Knapp, a certified forester and arborist, to examine the trees to determine the monetary loss due to topping. In Knapp's declaration, he stated that the topping decreased the condition of the trees by 20 percent due to "potential for decay, weak leader attachment, and future damage potential." CP at 259. Knapp made a loss-of-value assessment using an arborist industry standard protocol for landscape tree appraisal—the Trunk Formula Method (TFM)[5]—which amounted to $15,700 in damages to the trees.

The Krakes hired Greg Richardson, a certified arborist, to examine the trees. In Richardson's declaration, he stated the "reductions" were made "consistent with reductions," "did not injure the trees," and "should be continued . . . to reduce the risk posed by the compromised attachments." CP at 345. In Pat Krake's February 2018 declaration, he stated that the trees "appeared to be in the same condition as they were following the previous reductions [from between 2005 and 2013] and they have since grown two feet beyond the topped height. The growth rate and appearance of the trees after the 2016 cutting is the same as it was after previous toppings." CP at 340. The trial court denied the Tsikayis' motion for partial summary judgment, finding there was a genuine issue of material fact as to whether the trees were injured.

The Tsikayis filed their second motion for partial summary judgment on the issue of liability for timber trespass and treble damages. The Krakes responded that the trees were not injured and as cotenants or common owners, they had lawful authority to maintain the trees, not

---

[5] TFM is an appraisal method that determines the loss of monetary value of a tree due to topping. It is the recommended protocol for appraising trees that are "considered too large to be replaced with nursery or field-grown stock." TFM factors in species, condition, size, and location of the tree, among other things. CP at 21.

limited to removing only branches overhanging their property. The Tsikayis filed depositions and additional declarations to support their second motion for partial summary judgment.

Chris Tsikayi declared she observed a landscaper standing in the trees on her property cutting tree trunks and branches. Knapp opined that the Krakes' removal of the treetops appeared to have a detrimental effect on the trees' long-term viability and that the topping itself was done in a manner to cause substantial injury to the trees. The topping created an increased likelihood of future injury due to the weak attachments of new growths from the new top of the tree.

Pat Krake declared that only lateral branches that had grown vertically and were either entirely growing on their property or encroaching on their property were reduced. Pat Krake explained that for branches not growing entirely on their property, the landscapers pulled the limbs to their side of the property and removed the limbs. Richardson, when confronted with his opinion in his earlier declaration that the topping did not injure the trees, stated, "A percentage of a certain amount of damage is going to be unavoidable through the tree's regular maintenance." CP at 376. Additionally, Richardson acknowledged that "[a]ll trimming involves cutting a tree" and "you could call any cut to a tree an injury technically." CP at 380. Even if a tree is properly reduced, the chance of decay is "never going to be zero" and it will take about 18 months to determine if any decay is reasonably compartmentalized.

The trial court granted partial summary judgment for the Tsikayis on the grounds that the trees were injured, the Krakes did not have authority to unilaterally cut off the treetops growing on the shared boundary line, and the Tsikayis were entitled to treble damages if they prove that a timber trespass occurred.

B.      *Trial*

The trial court instructed jurors to decide only two issues—whether the Tsikayis gave the Krakes permission to cut the trees and, if not, the amount of the Tsikayis' damages. At trial, witnesses testified consistent with the facts above. The Tsikayis and Pat Krake indicated that the trees provided privacy screening. Pat Krake testified he could not see into the Tsikayis' home. Knapp testified that the Krakes' removal of the treetops caused a reduction in the trees' value totaling $15,700. In particular, Knapp stated that due to the removal of the treetops, the trees no longer provided the same degree of shading and privacy.

At the close of the Tsikayis' case-in-chief, the Krakes moved for a directed verdict on damages arguing there was no admissible evidence of damages to the trees because the trees suffered no permanent damage. The trial court denied the Krakes' motion, ruling that damage of a temporary nature is still compensable. At the close of all the evidence, the Krakes renewed their motion for a directed verdict. The trial court denied the Krakes' motion. The jury found damages in the amount of $15,700 for the Tsikayis. The trial court trebled the damages award and entered judgment against the Krakes.

The Krakes appeal.

ANALYSIS

I. SUMMARY JUDGMENT

The Krakes argue the trial court erred in granting partial summary judgment against them because the trees were not injured as a matter of law under RCW 64.12.030, and they had lawful authority to cut the trees as common owners. We disagree.

6

A.       *Legal Principles*

We review grants of summary judgment de novo, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party.  *Pearson v. Dep't of Lab. & Indus.*, 164 Wn. App. 426, 431, 262 P.3d 837 (2011).  We affirm a grant of summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Id.*

We review the meaning of statutes de novo.  *Jongeward v. BNSF Ry. Co.*, 174 Wn.2d 586, 592, 278 P.3d 157 (2012).  When interpreting a statute, courts aim to discern and execute the legislature's intent.  *Porter v. Kirkendoll*, 194 Wn.2d 194, 211, 449 P.3d 627 (2019).  If the statute's meaning is plain on its face, courts must effectuate that plain meaning as "an expression of legislative intent."  *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).  To determine a statute's plain meaning, we consider the context of the statute in which the provision at issue is found, the provision's language, and related statutes.  *Halme v. Walsh*, 192 Wn. App. 893, 903, 370 P.3d 42 (2016).

The statute is ambiguous if, after this inquiry, it has more than one reasonable meaning, wherein it is appropriate to consider extrinsic sources to aid in interpretation.  *Campbell & Gwinn,* 146 Wn.2d at 12.  Whenever possible, we construe statutes so "no clause, sentence or word shall be superfluous, void, or insignificant."  *City of Seattle v. Long*, 198 Wn.2d 136, 148, 493 P.3d 94 (2021) (internal quotation marks omitted) (quoting *Kasper v. City of Edmonds*, 69 Wn.2d 799, 804, 420 P.2d 346 (1966)).  Additionally, courts "must not add words where the legislature has chosen not to include them."  *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003).

RCW 64.12.030 provides that a timber trespass is committed "[w]henever any person shall cut down, girdle, *or otherwise injure*, or carry off any tree, . . . timber, or shrub on the land of another person . . . without lawful authority" (emphasis added).

B.     *To "Otherwise Injure" the Trees Under RCW 64.12.030*

The Krakes contend that the "or otherwise injure" provision must be read in conjunction with the other words with which it is associated—to cut down, girdle, or carry off—and cannot be broadly construed as a catchall category of harm because the legislature's use of cut down, girdle, and carry off would be rendered superfluous.  Br. of Appellant at 13-15.  The Krakes suggest the timber trespass statute's use of specific words indicate the degree of conduct or harm, including destruction, that must result in order to violate the penal statute and that proper and regular maintenance is excluded.  The Krakes' arguments fail.

RCW 64.12.030 applies when a person commits a direct trespass, regardless of whether the person is physically present on the plaintiff's land, "that causes immediate, not collateral, injury to a plaintiff's timber, trees, or shrubs." *Jongeward*, 174 Wn.2d at 606.  We consider both provisions .030 and .040 when interpreting RCW 64.12.030.  *See Halme*, 192 Wn. App. at 903 (We interpret statutes in context, discerning plain meaning from related statutes, among other things).  Provision .040 allows a plaintiff to recover single damages when "trespass [is] casual or involuntary" whereas .030 allows a plaintiff to recover treble damages for willful, direct trespasses.  RCW 64.12.040; *see also* RCW 64.12.030.  "RCW 64.12.040 serves as a mitigation provision." *Jongeward*, 174 Wn.2d at 593.

In *Jongeward*, our Supreme Court addressed whether a defendant who negligently caused a fire that spread to another's property, thereby damaging or destroying the plaintiff's trees,

"otherwise injure[d]" trees under former RCW 64.12.030.[6]  174 Wn.2d at 592.  It noted "our canons suggest that the legislature used the phrase 'otherwise injure' to describe direct trespasses that are comparable to cutting down, girdling, and carrying off, such as spiking or poisoning." *Jongeward*, 174 Wn.2d at 604.  Therefore, the Court determined that negligently causing a fire did not constitute a direct act or omission that can be penalized under former RCW 64.12.030. *See Jongeward*, 174 Wn.2d at 601, 607.  Unlike the negligently caused fire in *Jongeward*, here, the Krakes willfully cut off the top third of a row of trees, which constituted a direct act that can be penalized under RCW 64.12.030 and does not fall under the mitigation provision under RCW 64.12.040.

To the extent that the Krakes argue that injury is limited to injuries that kill a tree, this is unsupported by authority, is not what the statute plainly says, and is inconsistent with the full statutory scheme of the timber trespass statute.  Subsection .030 does not require the killing of a tree. *See Rest. Dev., Inc.*, 150 Wn.2d at 682.

Here, it is undisputed that the Krakes cut off the top third of a row of trees that measured about 31 feet in height before the removal.  Moreover, the facts demonstrate that the Krakes' conduct caused injury to the trees within the meaning of RCW 64.12.030.  In Knapp's declaration, he expressed that the Krakes' severance of the treetops was done in a manner to cause substantial injury to the trees.  In Richardson's deposition, he conceded, stating, "A percentage of a certain amount of *damage is going to be unavoidable* through the tree's regular

---

[6] *Jongeward* interpreted former RCW 64.12.030, which in relevant part did not have a comma between "girdle or otherwise injure."  The current statute has a comma inserted after "girdle." The Washington Supreme Court concluded that the 2009 insertion of the comma after girdle was "of no import here." *Jongeward*, 174 Wn.3d at 602.

maintenance" and admitted that "[a]ll trimming involves cutting a tree" and "you could call any cut to a tree an *injury* technically." CP at 380 (emphasis added). Thus, even when we view the record in the light most favorable to the Krakes as the nonmoving party, the record supports that the Krakes injured the trees for purposes of the timber trespass statute, RCW 64.12.030, and that there are no genuine issues of material fact regarding injury. Though the Krakes suggest the timber trespass statute's use of specific words indicate the degree of conduct or harm that must result in order to violate the penal statute, the question of the degree of injury was left to the jury to discern by way of determination of the damages incurred and is not for us to decide on appeal.

C.      *Removing the Treetops as Common Owners*

The Krakes argue the trial court erred in granting partial summary judgment against them because they had lawful authority to cut the trees as common owners. Specifically, the Krakes contend that their severance of the treetops straddling the common property line was done with lawful authority as a matter of law because they were commonly owned property. We disagree.

Under RCW 64.12.030, the timber trespass statute "applies only to persons acting without lawful authority." *Mustoe v. Ma*, 193 Wn. App. 161, 170, 371 P.3d 544 (2016). Trees located directly on the property line of adjoining property owners are the common property of both property owners. *Herring v. Pelayo*, 198 Wn. App. 828, 836, 397 P.3d 125 (2017). As tenants in common, the Tsikayis and Krakes were each entitled to maintain the boundary trees, but not in a way that interfered with the rights of the other cotenants. *Herring*, 198 Wn. App. at 837.

In *Herring*, the Herrings removed branches from a tree located on a common property line shared with the Pelayos. The Pelayos believed the branch removal caused the tree to

become unbalanced and constitute a danger to their home and safety, so they removed the remaining branches, which caused the boundary tree to die. *Herring*, 198 Wn. App. at 831. In that case, this court held that "where a tree stands on a common property line, the common owners of the tree may lawfully trim vegetation overhanging their property but not in a manner that the common owner knows will kill the tree." *Id.* at 838-39.

The Krakes appear to assert that our holding in *Herring* allows an adjoining property owner to maintain a boundary tree, such that they can unilaterally remove over nine feet of growth, so long as their conduct does not destroy or kill the boundary tree. We disagree to the extent that their argument implies a party can remove parts of a boundary tree regardless of whether the vegetation overhangs either common owner's land. While the Krakes may "lawfully trim vegetation overhanging their property," the Krakes cut off approximately nine feet from the boundary treetops—notwithstanding that some of the branches of the boundary treetops were situated on and overhung the Tsikayis' property. *Herring*, 198 Wn. App. at 838-39.

Additionally, the Tsikayis indicated that the trees were used as a privacy screen, and Knapp noted that due to the treetop removal, the trees no longer provided the same degree of privacy. Despite Pat Krake's inability to see into the Tsikayis' house, that is insufficient to create a genuine issue of material fact as privacy is not limited to viewing inside another's house. Const. Art. I, §7. Contrary to what appears to be argued, the Krakes did *not* have an unfettered right to cut off the top nine feet of the boundary trees, even for the sake of tree maintenance, if it interfered with the coequal rights of the Tsikayis. *See Herring*, 198 Wn. App. at 838.

The Krakes' conduct of removing the height of the privacy screen by approximately nine feet interfered with the Tsikayis' coequal rights to the trees as a privacy screen. There are no

11

genuine issues of material fact regarding the Krakes' lack of lawful authority as common owners to cut the tops of the boundary trees not overhanging their property, and the Tsikayis were entitled to judgment as a matter of law on this issue. Thus, we affirm the grant of summary judgment on the issue of lack of lawful authority as common owners.

## II. DIRECTED VERDICT

The Krakes argue the trial court erred in denying their motion for directed verdict because the Tsikayis failed to present evidence of any damages caused by the Krakes' conduct. We disagree.

A.    *Legal Principles*

We review a trial court's denial of a motion for a directed verdict de novo. *Ramey v. Knorr*, 130 Wn. App. 672, 676, 124 P.3d 314 (2005). In a motion for a directed verdict, the moving party admits the truth of the nonmoving party's evidence and all reasonable inferences that can be drawn from it. *Id.* at 675-76. We consider the evidence in the light most favorable to the nonmoving party. *Id.* at 676. A directed verdict is appropriate only if it can be held as a matter of law that there is no substantial evidence or reasonable inferences to sustain a verdict for the nonmoving party. *Thola v. Henschell*, 140 Wn. App. 70, 81, 164 P.3d 524 (2007).

B.    *Substantial Evidence Sustains the Verdict for the Tsikayis*

The Krakes contend that no evidence of damages was presented at trial, but the record shows otherwise. First, there is evidence in the record that the trees were reduced in height by approximately nine feet. Additionally, the Tsikayis presented expert witness testimony wherein Knapp made a loss-of-value assessment using an arborist industry standard protocol for landscape tree appraisal, TFM, which amounted to $15,700 in damages to the trees. Knapp's

assessment accounted for his determination that the condition of the trees decreased by 20 percent due to potential for decay, weak leader attachment, and future damage potential. We take the Tsikayis' evidence as true, and the reasonable inference drawn from that evidence to conclude that damages were incurred. Thus, when viewed in the light most favorable to the Tsikayis, we hold that there was substantial evidence to sustain the verdict against the Krakes.

## CONCLUSION

We affirm the trial court's grant of partial summary judgment against the Krakes and its denial of the Krakes' motion for a directed verdict.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Cruser, C.J.

Price, J.

13