

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE    SEP 2 6 2019

CHIEF JUSTICE



This opinion was
filed for record
at 8 am on Sept 26 2019

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| JERRY PORTER and KAREN ZIMMER, husband and wife,<br><br>        Respondents,<br><br>    v.<br><br>PEPPER E. KIRKENDOLL and CLARICE N. KIRKENDOLL, husband and wife,<br><br>        Petitioners,<br><br>KYLE PETERS AND ANDREA PETERS, husband and wife; G & J LOGGING, INC., a Washington Corporation; MITCH PAYNE; JOHN BOGER; DANIEL SHEETS, a/k/a BOONE SHEETS, and JENNIFER SHEETS, husband and wife; BOONE'S MECHANICAL CUTTING,, INC., a Washington Corporation; and JOHN DOES 1-5,<br><br>        Defendants. | NO. 96214-6<br><br><br>EN BANC<br><br><br>Filed      SEP 2 6 2019 |

GORDON McCLOUD, J.—Pepper and Clarice Kirkendoll hired loggers to harvest their trees. But Pepper Kirkendoll misrepresented the boundaries of his and Clarice's land, and the loggers harvested trees belonging to the neighbors, Jerry

Porter and Karen Zimmer. Porter and Zimmer sued the Kirkendolls and the loggers. The loggers settled with Porter and Zimmer and assigned to them their indemnity and contribution claims against the Kirkendolls as part of that settlement. The remaining parties then filed separate motions for summary judgment. The trial court dismissed the case, ruling that the settlement released the Kirkendolls from liability and that Porter and Zimmer had no valid contribution or indemnity claims.

The Court of Appeals reversed, making a series of holdings. It held that the settlement did not release the Kirkendolls from potential liability for their own tort of directing the timber trespass. It held that Porter and Zimmer could proceed with their assigned indemnity claims, but not with their assigned contribution claims. And it held that Porter and Zimmer are precluded from recovering under the waste statute because relief is available under the timber trespass statute.

We affirm the appellate court's holdings that the settlement did not release the Kirkendolls from liability and that Porter and Zimmer are precluded from recovering under the waste statute. But we reverse the appellate court's holding on the indemnity and contribution claims.

FACTUAL AND PROCEDURAL BACKGROUND

Pepper Eugene Kirkendoll and Clarice Kirkendoll own a parcel of timberland for the sole purpose of harvesting timber. Clerk's Papers (CP) at 289. The couple's land abuts the western edge of a 60-foot-wide easement, and that easement is located

2

on land owned by Jerry Porter and Karen Zimmer. CP at 54, 289-91, 313. Within the easement runs a private access road known as Madison Drive. CP at 289-90. Given the location of Madison Drive within the easement, a strip of land to the west of the access road but to the east of the Kirkendolls' land belongs to Porter and Zimmer; the Kirkendolls do not own all the land west of Madison Drive. CP at 49, 51-52.

Nevertheless, when Pepper Kirkendoll hired G & J Logging Inc. to harvest timber, CP at 141, he represented that he and Clarice owned all the land west of Madison Drive, CP at 45, 53. G & J Logging hired Boone's Mechanical Cutting Inc. to help with the job, CP at 94, 140, and the two companies harvested 51 Douglas firs located on Porter and Zimmer's land. CP at 5, 9, 140, 314.

Porter and Zimmer sued the Kirkendolls, G & J Logging,[1] and Boone's Mechanical Cutting[2] for waste under RCW 4.24.630 and for timber trespass under RCW 64.12.030. CP at 1-3. Specifically, Porter and Zimmer alleged that the "Defendants intentionally, recklessly or negligently trespassed upon Plaintiffs' real property . . . and cut trees" and then "yarded, processed, and loaded the felled trees

---

[1] Porter and Zimmer also sued the owners and two employees of G & J Logging. CP at 1-2. We refer to these defendants collectively as the G & J defendants.

[2] Porter and Zimmer also sued the owners of Boone's Mechanical Cutting. CP at 1-2. We refer to these defendants collectively as the Boone defendants.

3

and removed them from the lot." CP at 2. The G & J defendants cross claimed against the Kirkendolls, arguing that G & J was "without any active fault" and seeking either contribution or indemnity. CP at 11-13. The Boone defendants cross claimed against the Kirkendolls and the G & J defendants, seeking "equitable or implied in fact indemnity." CP at 586-88.

Porter and Zimmer settled with the G & J and Boone defendants for $125,000. CP at 164, 225.[3] As part of the settlement, the G & J and Boone defendants assigned to Porter and Zimmer their contribution and indemnity cross claims against the Kirkendolls. *Id.*

Porter and Zimmer then moved for partial summary judgment on three issues. CP at 27-33. First, Porter and Zimmer argued that the Kirkendolls were required to indemnify the G & J and Boone defendants as a matter of law. CP at 30. Second, Porter and Zimmer argued that the case should proceed to trial under the waste statute rather than under the timber trespass statute. CP at 30-32. Third, Porter and Zimmer argued that the Kirkendolls were liable for treble damages as a matter of law. CP at 32-33. Porter and Zimmer claimed that "[o]nly the amount of damages remain[ed] for trial." CP at 27.

---

[3] As part of the settlement, the Boone defendants also agreed to drop their cross claim against the G & J defendants. CP at 164.

4

The Kirkendolls opposed Porter and Zimmer's motion and filed their own motion for summary judgment. CP at 72-88. In their motion, the Kirkendolls argued that the G & J and Boone defendants had no contribution or indemnity claims to assign because they failed to follow the settlement procedures outlined in the tort reform act,[4] which they believed covered the torts at issue here, and which requires a reasonableness hearing before settlement in some situations. CP at 81-85. The Kirkendolls also argued that the settlement released them from liability under principles of vicarious liability. CP at 85-87.

Adopting the Kirkendolls' position "in total," the trial court granted their motion for summary judgment and dismissed the case. Verbatim Report of Proceedings (VRP) (Dec. 2, 2016) at 38-40; *see also* CP at 233-36. The trial court did not decide whether the G & J and Boone defendants would have had valid contribution or indemnity claims if they had followed what the trial court perceived as the correct settlement procedures.

Porter and Zimmer appealed. CP at 276. The Court of Appeals affirmed in part and reversed in part. *Porter v. Kirkendoll*, 5 Wn. App. 2d 686, 690, 421 P.3d 1036 (2018). That court held that the settlement did not release the Kirkendolls from liability under principles of vicarious liability. *Id.* at 699-700. It also held that the

---

[4] In this opinion, we refer to chapter 4.22 RCW as the tort reform act.

tort reform act does not apply to timber trespass because it is an intentional tort, *id.* at 698 (citing *Birchler v. Castello Land Co.*, 133 Wn.2d 106, 115, 942 P.2d 968 (1997)), and therefore Porter and Zimmer could proceed with their assigned indemnity claims, *id.* at 700-01, but not with their assigned contribution claims, *id.* at 703-04. Finally, the court held that Porter and Zimmer were precluded from recovering under the waste statute because relief is available under the timber trespass statute. *Id.* at 702-03. The court remanded the case to the trial court for further proceedings on Porter and Zimmer's timber trespass and indemnity claims. *Id.* at 706-07.[5]

The Kirkendolls petitioned this court for review, renewing their argument that the settlement agreement released them from liability under principles of vicarious liability. They also argued that they are not liable for indemnity as a matter of law. In their answer, Porter and Zimmer sought review of a third issue: whether the timber trespass statute precludes them from recovering under the waste statute. We granted review of both the petition and the cross petition without limiting the issues. *Porter v. Kirkendoll*, 192 Wn.2d 1009 (2019).

---

[5] The Court of Appeals also reversed the trial court's decision to exclude expert testimony. *Porter*, 5 Wn. App. 2d at 705-06. That issue is not before us.

STANDARD OF REVIEW

We review summary judgment rulings de novo. *Pendergrast v. Matichuk*, 186 Wn.2d 556, 563-64, 379 P.3d 96 (2016) (citing *Becerra Becerra v. Expert Janitorial, LLC*, 181 Wn.2d 186, 194, 332 P.3d 415 (2014)). We also review the meaning of a statute de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). When reviewing summary judgment rulings, we "consider 'facts and reasonable inferences from the facts . . . in the light most favorable to the nonmoving party.'" *Harper v. Dep't of Corr.*, 192 Wn.2d 328, 340, 429 P.3d 1071 (2018) (alteration in original) (quoting *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999)). We will affirm a "grant [of] summary judgment when 'there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Hertog*, 138 Wn.2d at 275).

ANALYSIS

I.   The settlement did not release the Kirkendolls from liability

The Kirkendolls argue that this is a case of vicarious liability, with Pepper Kirkendoll acting as principal and the loggers acting as his agents. Pepper E. Kirkendoll's Mot. for Discr. Review (Pet. for Review) at 5-8. The Kirkendolls claim that by settling with the loggers (allegedly Pepper's agents), Porter and Zimmer released the Kirkendolls from liability. *Id.* at 8-11. The trial court agreed with this argument and granted the Kirkendolls' motion for summary judgment. VRP (Dec.

2, 2016) at 38-40. But this is not a case of vicarious liability; Porter and Zimmer allege that the Kirkendolls are directly, not vicariously, liable. CP at 1-3. The Court of Appeals reversed the trial court partly for this reason, *Porter*, 5 Wn. App. 2d at 699-700, and we affirm.

"In contrast to direct liability, which is liability for breach of one's own duty of care, vicarious liability is liability for the breach of someone else's duty of care." 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 4:1, at 178-79 (4th ed. 2013). A principal may be vicariously liable "as a matter of public policy to ensure that the plaintiff has the maximum opportunity to be fully compensated." *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 723, 658 P.2d 1230 (1983), *abrogated on other grounds by Crown Controls, Inc. v. Smiley*, 110 Wn.2d 695, 756 P.2d 717 (1988). But that public policy is "inapplicable when a plaintiff has accepted a release from the primarily liable tortfeasor who was financially capable of making him whole." *Vanderpool v. Grange Ins. Ass'n*, 110 Wn.2d 483, 487, 756 P.2d 111 (1988). "When . . . a plaintiff settles with a solvent agent from whom he could have received full compensation, the very foundation of the principal's liability is undermined." *Id.* In at least some situations, then, a plaintiff releases a vicariously liable principal by settling with a solvent agent. *Glover*, 98 Wn.2d at 722-23.

8

But a plaintiff does not release a directly liable party by settling with another directly liable party. In *Glover*, the plaintiff alleged that a hospital was both directly liable for breaching its "duty of care to the patient" and "vicariously liable for the negligent acts of its agents." *Id.* at 710. The plaintiff and the hospital's agents settled, *id.*, and this court held that the settlement with the solvent agents released the hospital from vicarious liability, *id.* at 718-24. But the court also held that the settlement did not release the hospital from direct liability, *id.* at 722-23, and remanded for trial on that issue, *id.* at 709. *Accord Seattle W. Indus., Inc. v. David A. Mowat Co.*, 110 Wn.2d 1, 5, 750 P.2d 245 (1988) (noting that the settlement in *Glover* relieved the hospital of vicarious but not direct liability).

This case involves direct, not vicarious, liability. Porter and Zimmer allege that Pepper Kirkendoll is directly liable for breach of his own duty of care. CP at 2-3; Porter & Zimmer's Answer to Pet. for Review at 12 ("This case was never a vicarious liability case."). In his deposition, Pepper Kirkendoll acknowledged that he represented to G & J Logging that he and Clarice Kirkendoll owned all the land west of Madison Drive. CP at 45, 53. A person who directs or advises another to commit a timber trespass is liable for his or her own "culpable misfeasance." *Ventoza v. Anderson*, 14 Wn. App. 882, 896, 545 P.2d 1219 (1976); *see also Hill v. Cox*, 110 Wn. App. 394, 404, 41 P.3d 495 (2002) (upholding liability of the individual who directed loggers to cut the trees but did not cut the trees himself). As

such, Porter and Zimmer did not release the Kirkendolls from liability by settling with the G & J and Boone defendants, and we affirm the Court of Appeals on this point.[6]

II. Porter and Zimmer have no right to indemnity, but they may have a right to contribution

In their motion for partial summary judgment, Porter and Zimmer argued that the Kirkendolls are required to indemnify the G & J and Boone Defendants as a matter of law. CP at 30.[7] Porter and Zimmer sought indemnification under two separate doctrines: (1) the common law doctrine of indemnification for passive tortfeasors and (2) the doctrine of equitable indemnification, otherwise known as the ABC Rule. CP at 591-92.

In response, the Kirkendolls argued that timber trespass is a strict liability tort and that the tort reform act, which applies to strict liability torts but not to intentional torts, abolished the common law right of indemnity. CP at 81, 83. The Kirkendolls

---

[6] The Court of Appeals also held that the loggers were not Pepper Kirkendoll's agents. *Porter*, 5 Wn. App. 2d at 699. If the loggers were Pepper Kirkendoll's agents, and if this were a case of vicarious liability, then the settlement may have released Pepper Kirkendoll. But this is not a case of vicarious liability. Pepper Kirkendoll is potentially directly liable for his own tort—directing a timber trespass—regardless of whether the loggers were his agents. It is therefore unnecessary for us to reach the agency issue.

[7] Plaintiffs Porter and Zimmer, not the G & J and Boone defendants, make this argument because the loggers assigned their indemnity claims to Porter and Zimmer as part of the settlement agreement. CP at 164, 225.

also argued that Porter and Zimmer could not recover under the doctrine of equitable indemnification. CP at 202-03.

The trial court ruled in favor of the Kirkendolls and dismissed the case. VRP (Dec. 2, 2016) at 39; *see also* CP at 233-36. The Court of Appeals reversed. *Porter*, 5 Wn. App. 2d at 700-02. In doing so, the Court of Appeals collapsed the two separate doctrines of indemnification into one and remanded because "[a] genuine issue remained as to whether the Loggers were without personal fault." *Id.* The Court of Appeals also rejected the Kirkendolls' renewed argument that timber trespass is a strict liability tort. *Id.* at 698; *see also* Resp'ts' Br. at 11-12 (Wash. Ct. App. No. 49819-7-II (2017)) (arguing that timber trespass is a strict liability tort).

We reverse. Porter and Zimmer cannot recover under either the common law doctrine of indemnification for passive tortfeasors or the doctrine of equitable indemnification.

### a. Common Law Doctrine of Indemnification for Passive Tortfeasors

If the doctrine of common law indemnification applies here, the Kirkendolls might be liable for what the loggers paid in settlement. *Rufener v. Scott*, 46 Wn.2d 240, 242-43, 280 P.2d 253 (1955). At common law, courts did not allow tortfeasors to seek contribution from each other; "a tortfeasor who paid an entire liability could not seek contribution from another tortfeasor even where that other tortfeasor paid nothing to the injured party." *Kottler v. State*, 136 Wn.2d 437, 441, 963 P.2d 834

11

(1998) (citing *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 292, 840 P.2d 860 (1992); *Wenatchee Wenoka Growers Ass'n v. Krack Corp.*, 89 Wn.2d 847, 850, 576 P.2d 388 (1978)). The paying tortfeasor could, however, argue that he or she was a "passive" tortfeasor—i.e., not at fault—and therefore should be indemnified by the primarily guilty, "active" tortfeasor. *Rufener*, 46 Wn.2d at 242-43; *see also Cent. Wash. Refrigeration, Inc. v. Barbee*, 133 Wn.2d 509, 513 n.3, 946 P.2d 760 (1997); 16 DEWOLF & ALLEN, *supra*, § 13:31, at 549. This form of indemnity was referred to as "common law indemnity," "a recognized limited exception to the general rule" barring contribution. *Weston v. New Bethel Missionary Baptist Church*, 23 Wn. App. 747, 751-52, 598 P.2d 411 (1978).

The tort reform act "abolished" "[t]he common law right of indemnity between active and passive tort feasors" and substituted a statutory right of contribution. RCW 4.22.040(3); *see also Johnson v. Cont'l W., Inc.*, 99 Wn.2d 555, 558, 663 P.2d 482 (1983). Although the tort reform act says that it "abolished" common law indemnity, subsequent case law makes clear that the common law right of indemnity remains available when the statutory right of contribution is unavailable. *Johnson*, 99 Wn.2d at 560 ("[I]t is not logical to assume it was the Legislature's intent that one would be denied *both* the right of contribution and a common law right of indemnity."); *Sabey v. Howard Johnson & Co.*, 101 Wn. App. 575, 590-91, 5 P.3d 730 (2000) ("The Tort Reform Act . . . abolishes common law

12

indemnity rights . . . only between joint tortfeasors with a right of contribution."). Thus, Porter and Zimmer have a common law right of indemnity only if the tort reform act does not provide them with a statutory right of contribution.

But whether Porter and Zimmer have a statutory right of contribution depends in turn on whether timber trespass is an intentional tort or a strict liability tort. As to intentional torts, the tort reform act does not provide a right of contribution. *Welch v. Southland Corp.*, 134 Wn.2d 629, 634, 952 P.2d 162 (1998); *see also* RCW 4.22.015 (omitting intentional torts from the definition of fault for purposes of the tort reform act); *Price v. Kitsap Transit*, 125 Wn.2d 456, 464, 886 P.2d 556 (1994) (noting that "intentional torts are part of a wholly different legal realm and are inapposite to the determination of fault" under the tort reform act). As to strict liability torts, it does. RCW 4.22.015.

We begin with the language of the timber trespass statutes. *Campbell & Gwinn*, 146 Wn.2d at 9-10. Those statutes provide for liability without any showing of a culpable, negligent, or any other mental state. RCW 64.12.030, .040. A person is liable for treble damages if he or she "cut[s] down, girdle[s], or otherwise injure[s], or carr[ies] off any tree . . . , timber, or shrub on the land of another person." RCW 64.12.030. However, a defendant can avoid treble damages if he or she proves that the trespass was "casual or involuntary" or done with "probable cause to believe that the land on which such trespass was committed was his or her own." RCW

13

64.12.040; *see also Jongeward v. BNSF Ry. Co.*, 174 Wn.2d 586, 594, 278 P.3d 157 (2012) (explaining that the burden is on the defendant to prove these mitigating factors). But even if the defendant can prove this, he or she is still liable "for single damages." RCW 64.12.040.

This shows that the legislature made timber trespass a strict liability tort (despite its nominal similarity to trespass, which has historically been considered an intentional tort). "Strict liability" "does not depend on proof of negligence or intent to do harm." BLACK'S LAW DICTIONARY 1099 (11th ed. 2019). It "is based instead on a duty to compensate the harms proximately caused by the activity or behavior subject to the liability rule." *Id.* Liability under the timber trespass statute does not depend on proof of negligence or intent to do harm. True, intent to do harm affects the amount of available damages under the timber trespass statute. RCW 64.12.030, .040; *Birchler*, 133 Wn.2d at 110 (explaining that treble damages are available under the timber trespass statute "when the trespass is 'willful'"); *Zellmer v. Zellmer*, 164 Wn.2d 147, 155 n.2, 188 P.3d 497 (2008) (explaining that "willful" means "actual intent to harm"). But intent to do harm does not affect liability. Even if a defendant proves that the trespass was not willful but was instead "casual or involuntary" or done with "probable cause to believe that the land on which such trespass was committed was his or her own," the defendant is still liable for ordinary damages. RCW 64.12.040.

Neither does proof of negligence affect liability. As this court noted in *Jongeward*, a person is liable for damages under the timber trespass statute even if the trespass was involuntary or accidental. 174 Wn.2d at 597 n.9, 604 n.14. For example, a person would be liable under the statute for the following involuntary and accidental timber trespass:

> A, while driving his automobile along the street in the exercise of due care, is suddenly overcome by a paralytic stroke, which he had no reason to anticipate. He loses control of the automobile and falls across the steering wheel, thereby turning the car so that it runs [into] and damages B's [trees].

*Cf.* RESTATEMENT (SECOND) OF TORTS § 166 & cmt. b, illus. 2 (AM. LAW INST. 1965) (concluding that the driver would *not* be liable under these circumstances for the intentional tort of trespass).

To be sure, we have sometimes associated timber trespass with trespass, an intentional tort. *Jongeward*, 174 Wn.2d at 597 n.9 (noting that "the timber trespass sounds in tort and trespass is an intentional tort" (citing *Birchler*, 133 Wn.2d at 115)); *Broughton Lumber Co. v. BNSF Ry. Co.*, 174 Wn.2d 619, 630 n.9, 278 P.3d 173 (2012) (companion case to *Jongeward* with same footnote). At the same time, we have been careful to keep the two torts separate. *Jongeward*, 174 Wn.2d at 605 n.15 ("Although our analysis of the statutory term 'trespass' is necessarily informed by the common law, we decline to conflate the two remedies."); *Birchler*, 133 Wn.2d at 117 n.5 (noting differences between timber trespass and property trespass). The

15

two torts are related, particularly when the timber trespass is willful under RCW 64.12.030 or committed with a reasonable but mistaken belief of land ownership, a mitigating circumstance under RCW 64.12.040.[8] But by imposing liability for nonnegligent, involuntary, and accidental acts, the timber trespass statute goes further than the common law intentional tort of trespass. Under the common law tort, the driver in the above example would not be liable for trespass. RESTATEMENT (SECOND) OF TORTS § 166 & cmt. b, illus. 2; *see also Hughes v. King County*, 42 Wn. App. 776, 780, 714 P.2d 316 (1986) (noting that "[l]iability for trespass exists *only* when there is an *intentional or negligent* intrusion . . ." (emphasis added) (citing RESTATEMENT (SECOND) OF TORTS §§ 158, 165, 166)). But the driver would be liable for the statutory tort of timber trespass. *Jongeward*, 174 Wn.2d at 597 n.9 (explaining that involuntary and accidental acts fall within the scope of the timber trespass statute).[9]

Although we have associated timber trespass with the intentional tort of trespass, we have never had a reason—until now—to decide whether timber trespass

---

[8] *Cf. Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA*, 559 U.S. 573, 583, 130 S. Ct. 1605, 176 L. Ed. 2d 519 (2010) (noting that the "intentional tort of trespass can be committed despite the actor's mistaken belief that she has a legal right to enter the property" (citing RESTATEMENT (SECOND) OF TORTS § 164 & cmt. e)).

[9] Oregon has a timber trespass statute with similar language, and we find the Oregon Court of Appeals' explanation of that statute's operation persuasive. *See Wyatt v. Sweitz*, 146 Or. App. 723, 728-31, 934 P.2d 544 (1997) (holding that Oregon's timber trespass statute "encompasses nonnegligent, nonvolitional trespass").

itself is an intentional tort. Today we hold that it is not. In doing so, we do not overrule *Jongeward, Broughton*, or *Birchler*. In *Birchler*, we noted that the parties conceded and the jury found intentional conduct, which "is required before emotional distress damages may be awarded under RCW 64.12.030." *Birchler*, 133 Wn.2d at 117 n.5. This comment reveals that we were well aware that a timber trespass is not always intentional. And in the companion cases of *Jongeward* and *Broughton*, we held that the timber trespass statute applies "only to direct acts causing immediate injuries." *Jongeward*, 174 Wn.2d at 606-07; *Broughton*, 174 Wn.2d at 640. The statute does not apply, we held, to "indirect acts or culpable omissions causing collateral damage," such as an out-of-control fire. *Jongeward*, 174 Wn.2d at 606-07; *Broughton*, 174 Wn.2d at 640. But we were careful to note that "[o]ur holding does not preclude recovery for involuntary trespass, only for indirect trespass causing consequential or collateral injury." *Jongeward*, 174 Wn.2d at 604 n.14. Thus, involuntarily driving a car into a tree and causing immediate injuries to that tree is conduct that fits neatly into the timber trespass statute as interpreted in *Jongeward* and *Broughton*.

In sum, liability under the timber trespass statute imposes a duty to compensate all harms proximately caused by acts that injure trees—regardless of proof of negligence or intent to do harm. *See* 16 DeWolf & Allen, *supra*, § 3:10, at 138-44 (placing timber trespass in chapter about strict liability). We therefore

17

hold that the timber trespass statute subjects a person to strict tort liability. And because the tort reform act explicitly applies to "acts or omissions . . . that subject a person to strict tort liability," RCW 4.22.015, Porter and Zimmer have a statutory right of contribution. Because they have a statutory right of contribution, they have no common law right to indemnity as a matter of law. RCW 4.22.040(3).

In briefing in both the trial court and the Court of Appeals, both parties correctly recognized that if the tort reform act applies, then the issue is whether Porter and Zimmer may seek contribution, not indemnity. *E.g.*, Br. of Appellants at 27-30 (Wash. Ct. App. No. 49819-7-II (2017)); Resp'ts' Br. at 27 (Wash. Ct. App. No. 49819-7-II (2017)). The trial court appears to have dismissed Porter and Zimmer's assigned contribution claims, despite recognizing that the tort reform act applies, because the parties to the settlement failed to hold a reasonableness hearing before settling. VRP (Dec. 2, 2016) at 38-40. *But see* RCW 4.22.060. The Court of Appeals affirmed the trial court but on different grounds, incorrectly holding that the tort reform act does not apply because timber trespass is an intentional tort. *Porter*, 5 Wn. App. 2d at 703-04. The Court of Appeals did not consider whether the trial court erred in dismissing the claims for failure to hold a reasonableness hearing. We therefore remand the case to the Court of Appeals to consider that question. RAP 13.7(b).

18

### b. Equitable Indemnification

The doctrine of equitable indemnification, otherwise known as the ABC Rule, serves as an exception to the "American Rule," which bars liability for attorney fees. *L.K. Operating, LLC v. Collection Grp., LLC*, 181 Wn.2d 117, 123-24, 330 P.3d 190 (2014); 16 DEWOLF & ALLEN, *supra*, § 6:24, at 306-07. Unlike common law indemnification, the tort reform act says nothing about the doctrine of equitable indemnification. *See generally*, ch. 4.22 RCW. Under the doctrine, "'where the acts or omissions of a party to an agreement or event have exposed one . . . to suit by persons not connected with the initial transaction or event,'" the exposed party may be entitled to attorney fees. *Blueberry Place Homeowners Ass'n v. Northward Homes, Inc.*, 126 Wn. App. 352, 358, 110 P.3d 1145 (2005) (quoting *Armstrong Constr. Co. v. Thomson*, 64 Wn.2d 191, 195, 390 P.2d 976 (1964)). The doctrine is referred to as the ABC Rule because of its three elements: (1) A acts wrongfully toward B, (2) that wrongful act "exposes or involves B in litigation with C, " and (3) "C was not connected with" A's "wrongful act . . . toward B." *Manning v. Loidhamer*, 13 Wn. App. 766, 769, 538 P.2d 136 (1975).

However, "a party may not recover attorney fees under the theory of equitable indemnity if, in addition to the wrongful act or omission of A, there are other reasons why B became involved in litigation with C." *Tradewell Grp., Inc. v. Mavis*, 71 Wn. App. 120, 128, 857 P.2d 1053 (1993). "[T]he critical inquiry under [prong two] of

19

equitable indemnity is whether, apart from A's actions, B's own conduct caused it to be 'exposed' or 'involved' in litigation with C." *Id.* at 129. "The analysis does not turn on whether the third party actually prevailed in its claims against 'A.'" *Id.* If it did, "every defendant found not negligent could recover attorney's fees against another defendant who was found negligent." *Manning*, 13 Wn. App. at 774.

Here, the Court of Appeals remanded Porter and Zimmer's claim for equitable indemnity for further proceedings because "[a] genuine issue remained as to whether the Loggers were without personal fault." *Porter*, 5 Wn. App. 2d at 700-02. But that is not the critical inquiry; if it were, every faultless defendant would be entitled to attorney fees from another, at-fault defendant. *Manning*, 13 Wn. App. at 774. The critical inquiry is whether the loggers' own conduct caused them "to be 'exposed' or 'involved' in litigation" with Porter and Zimmer. *Tradewell Grp.*, 71 Wn. App. at 129. And the answer to that inquiry is a resounding yes. It is undisputed that the loggers cut 51 Douglas firs located on Porter and Zimmer's land. This cutting caused the loggers to be exposed to strict liability under the timber trespass statute and involved in litigation with Porter and Zimmer, regardless of whether they could ultimately pass fault to the Kirkendolls.

We therefore reverse the Court of Appeals and hold that Porter and Zimmer cannot recover under the doctrine of equitable indemnification as a matter of law.

20

III. Porter and Zimmer are precluded from recovering under the waste statute because relief is available under the timber trespass statute

In addition to their timber trespass claim, Porter and Zimmer seek relief under the waste statute, RCW 4.24.630. That statute provides more expansive remedies than the timber trespass statute; in addition to treble damages, the injured party may recover "reasonable costs, including but not limited to investigative costs and reasonable attorneys' fees and other litigation-related costs." RCW 4.24.630(1). However, the waste statute explicitly states that it "does not apply in any case where liability for damages is provided under RCW 64.12.030," the timber trespass statute. RCW 4.24.630(2). The Court of Appeals relied on that provision to hold that Porter and Zimmer could not recover under the waste statute. *Porter*, 5 Wn. App. 2d at 702-03. We affirm.

When interpreting a statute, this court strives "to ascertain and carry out the [l]egislature's intent." *Campbell & Gwinn*, 146 Wn.2d at 9. If the legislature's intent is clear from the statute's plain meaning, then the court "must give effect to that plain meaning." *Id.* at 9-10. "Whenever possible, statutes are to be construed so "'no clause, sentence or word shall be superfluous, void, or insignificant.'"" *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 452, 210 P.3d 297 (2009) (quoting *Kasper v. City of Edmonds*, 69 Wn.2d 799, 804, 420 P.2d 346 (1966) (quoting *Groves v. Meyers*, 35 Wn.2d 403, 407, 213 P.2d 483 (1950))). But the court

"must not add words where the legislature has chosen not to include them." *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003).

When ascertaining a statute's plain meaning, we examine "the statute in which the provision at issue is found, as well as related statutes or other provisions of the same act in which the provision is found." *Campbell & Gwinn*, 146 Wn.2d at 10. "[I]f, after this inquiry, the statute remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history." *Id.* at 12 (citing *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001); *Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 312, 884 P.2d 920 (1994)). Ultimately, the court must "harmonize[]" "[r]elated statutory provisions . . . to effectuate a consistent statutory scheme that maintains the integrity of the respective statute." *Koenig v. City of Des Moines*, 158 Wn.2d 173, 184, 142 P.3d 162 (2006) (citing *State v. Chapman*, 140 Wn.2d 436, 448, 998 P.2d 282 (2000)).

The waste statute reads, in relevant part,

> Every person who goes onto the land of another and who removes timber, crops, minerals, or other similar valuable property from the land, or wrongfully causes waste or injury to the land, or wrongfully injures personal property or improvements to real estate on the land, is liable to the injured party for treble the amount of the damages caused by the removal, waste, or injury. . . . In addition, the person is liable for reimbursing the injured party for the party's reasonable costs, including but not limited to investigative costs and reasonable attorneys' fees and other litigation-related costs.

22

RCW 4.24.630(1). The statute is disjunctive: a person is liable if he or she (1) "goes onto the land of another and . . . removes timber, crops, minerals, or other similar valuable property from the land," (2) "wrongfully causes waste or injury to the land," or (3) "wrongfully injures personal property or improvements to real estate on the land." *Id.* The first ground for relief is also disjunctive: a person is liable if he or she "removes timber, crops, minerals, *or* other similar valuable property from the land." *Id.* (emphasis added). Thus, the statute imposes liability for treble damages and reasonable costs, including attorney fees, on "[e]very person who goes onto the land of another and who removes timber . . . from the land." *Id.*

> As discussed above, the timber trespass statute reads, in relevant part,
>
> Whenever any person shall cut down, girdle, or otherwise injure, or carry off any tree, . . . timber, or shrub on the land of another person, . . . without lawful authority, . . . any judgment for the plaintiff shall be for treble the amount of damages claimed or assessed.

RCW 64.12.030. This statute is also disjunctive and imposes liability for treble damages on "any person [who] . . . carr[ies] off any . . . timber . . . on the land of another person." *Id.* We have explained that "carry off" means "'to remove to a distance.'" *Jongeward*, 174 Wn.2d at 598 (quoting AN AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE 177 (1853)). Thus, the timber trespass statutes impose liability on "any person [who] . . . [removes to a distance] any . . . timber . . . on the land of another person." RCW 64.12.030.

23

These portions of the two statutes are redundant. The waste statute imposes liability on every person who removes timber from the land of another, and the timber trespass statute imposes liability on any person who removes to a distance any timber on the land of another person. The defendants here are therefore potentially liable to Porter and Zimmer under both RCW 4.24.630(1) and RCW 64.12.030. But since the timber trespass statute applies, the plain language of the waste statute compels the conclusion that the waste statute does not. RCW 4.24.630(2) (stating that the waste statute "does not apply in any case where liability for damages is provided under RCW 64.12.030").[10]

Porter and Zimmer argue that if the waste statute does not apply, then that statute's "removes timber" language is rendered meaningless. Suppl. Br. of Resp'ts Porter & Zimmer at 12-13. They note that "[i]n every 'removes timber' claim under the waste statute, liability for damages will also be provided under the timber trespass statute, triggering the [waste statute's] exception." *Id.* at 13. Porter and Zimmer argue that this court should avoid such a result and should instead harmonize the waste and timber trespass statutes. *Id.* at 17-18. They claim that this court can harmonize the statutes by interpreting the waste statute's exception

---

[10] Since the sole issue in this case involves timber trespass, we need not decide how RCW 4.24.630 and RCW 64.12.030 would interact in "a dispute over comprehensive property damage that includes damage to property and removal of timber." *See Gunn v. Riely*, 185 Wn. App. 517, 525 n.6, 344 P.3d 1225 (2015).

"narrowly" to allow them to recover that statute's additional remedies. *Id.* at 17. This narrow interpretation would allow them to recover both treble damages under the timber trespass statute and "reasonable costs, including but not limited to investigative costs and reasonable attorneys' fees and other litigation-related costs" under the waste statute. *Id.* at 11.

But Porter and Zimmer's proposed solution is incompatible with the legislature's clear intent. The legislature explicitly stated that the waste statue "*does not apply* in any case where liability for damages is provided under RCW 64.12.030," the timber trespass statute. RCW 4.24.630(2) (emphasis added); *see also Gunn*, 185 Wn. App. at 525. Porter and Zimmer ask this court to ignore the legislature's clear directive so as not to violate the court's own tool of statutory construction to avoid rendering any clause superfluous "[w]henever possible." *HomeStreet*, 166 Wn.2d at 452. But to do so, we would have to violate a different tool of statutory construction: we would have to add words where the legislature has chosen not to include them. We would have to add an exception to the waste statute's clear language: "[t]his section does not apply in any case where liability for damages is provided under RCW 64.12.030, *except the injured party may still recover reasonable costs under this section.*" But that is not what the statute says. And nothing in the legislative history suggests that this was the legislature's desired result.

Porter and Zimmer cannot overcome the waste statute's plain language. They are explicitly precluded from recovering under that statute if liability for damages is available under the timber trespass statute. The timber trespass statute makes unlawful the cutting down and carrying off of any tree or timber of another person. Porter and Zimmer allege that the "Defendants . . . trespassed upon Plaintiffs' real property . . . and cut trees" and then "yarded, processed, and loaded the felled trees and removed them from the lot." CP at 2. Clearly, the timber trespass statute applies to the allegations of this case. We therefore affirm the Court of Appeals and adhere to the waste statute's explicit exception, even though doing so renders one phrase of the waste statute (i.e., "removes timber"), in one of the statute's three alternative grounds for relief, redundant here.

## CONCLUSION

In sum, we hold that the settlement between Porter, Zimmer, and the loggers did not release Pepper and Clarice Kirkendoll from liability. The Kirkendolls remain potentially liable for directing a timber trespass, and this is true regardless of whether the loggers were agents of the Kirkendolls. We also hold that Porter and Zimmer cannot recover under either the doctrine of common law indemnification or the doctrine of equitable indemnification. The tort reform act replaced common law indemnity with a right of contribution for torts that subject a person to strict tort liability, and as the Kirkendolls argued in the courts below, the timber trespass

26

statute subjects a person to strict tort liability. And Porter and Zimmer cannot recover under the doctrine of equitable indemnification because the loggers' own conduct exposed them to strict liability and involved them in this litigation. Finally, we hold that Porter and Zimmer are precluded from recovering under the waste statute because that statute explicitly states that it does not apply when the timber trespass statute applies, and the timber trespass statute clearly applies here.

We therefore remand to the Court of Appeals to consider whether the trial court erred in dismissing Porter and Zimmer's assigned contribution claims for failure to hold a reasonableness hearing and for further proceedings consistent with this opinion.

No. 96214-6

_(signature)_ Gordon McCloud, J.

WE CONCUR:

_(signature)_ Fairhurst, C.J.

_(signature)_ Stephens, J.

_(signature)_ Madsen, J.

_(signature)_ Wiggins, J.

_(signature)_ Gonzalez, J.

_(signature)_ Owens, J.

_(signature)_ Yu, J.

28