**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| DANIEL R. WEHNERT AND ANGELA M. WEHNERT, | No. 88012-8-I |
| Respondents, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| DAVID PRIMACIO AND KANOE PRIMACIO, | |
| Appellants. | |

FELDMAN, J. — David and Kanoe Primacio appeal from the trial court's judgment in favor of Daniel and Angela Wehnert on the Wehnerts' claims for adverse possession, nuisance, and timber trespass. The Primacios also appeal from the trial court's order granting attorney fees and expert witness costs in favor of the Wehnerts as well as a related contempt sanction for failing to pay that award by a prescribed deadline. We vacate the award of expert witness costs and the trial court's contempt sanction, but in all other respects we affirm.

I

The parties here are neighbors owning large tracts of land in the rural area outside the city limits of Monroe, Washington. The portion of property at issue (referred to herein as the Disputed Area) consists of two small strips of land on the southern edge of the Wehnerts' property. When the Wehnerts hung a string of

lights and installed individual solar lights along a trail in the Disputed Area, David Primacio asserted the lights were on his property and tore them down. The Wehnerts disputed the property line and asked the Primacios to wait until the boundary dispute could be resolved before doing anything further. Rather than comply with that request, David Primacio entered the Disputed Area with heavy equipment, cut down approximately 10 trees on the trail, and tore out shrubs and stumps. He also used the equipment to block the trail with dirt, debris, shrubs, stumps, and logs so it was impassible and to scrape away grass and shrubs in the Disputed Area.

The Wehnerts then filed this lawsuit, asserting claims for adverse possession, trespass, nuisance, timber trespass, and waste stemming from the Primacios' entry onto their property, removal of lawn and landscaping improvements, and destruction of the dirt path. The Wehnerts sought compensatory damages for the destruction of their property, emotional distress damages, attorney fees, and costs of suit.

The Wehnerts prevailed at trial on their adverse possession, nuisance, and timber trespass claims. Conversely, the court concluded that the Wehnerts had failed to establish their trespass claim and declined to reach their waste claim given its findings on the other causes of action. Based on its findings and conclusions, the court quieted title to the Disputed Area in favor of the Wehnerts and awarded (1) $53,310 for timber trespass, which the court trebled to $159,930, (2) $20,000 for emotional distress damages predicated on the timber trespass claim, and (3) additional damages totaling $20,919.59 for the nuisance claim.

The court subsequently granted the Wehnerts' motion for an award of attorney fees and expert witness costs and ordered the Primacios to pay the Wehnerts $82,921.73 for those expenses within ten days (by April 17, 2025). When the Primacios failed to do so, the court granted the Wehnerts' motion for contempt sanctions and ordered the Primacios to pay an additional $500 per day from the date of its order (May 14, 2025) until the award was paid. Lastly, the court entered a supplemental judgment against the Primacios for the fees and costs that it had awarded, postjudgment interest at 12 percent per annum, and an additional $500 per day until the judgment is satisfied.

The Primacios timely appealed.

II

The Primacios do not challenge most of the trial court's findings, including its findings regarding the Wehnerts' adverse possession and nuisance claims. Instead, they focus on the timber trespass claim and the trial court's award of attorney fees and expert witness costs. We discuss each in turn.

A

Addressing the trial court's liability determination regarding the Wehnerts' timber trespass claim, the Primacios argue the trial court erred in finding that they caused a timber trespass to occur on the Wehnerts' property and in awarding damages totaling $159,930 (trebled from $53,310) for the value of lost timber. We disagree on both points.

Our review of these issues is deferential to the trial court's fundamental role as factfinder. "Where there is conflicting evidence, it is not the role of the appellate court to weigh and evaluate the evidence." *Burnside v. Simpson Paper Co.*, 66

Wn. App. 510, 526, 832 P.2d 537 (1992). Rather, our "role is simply to determine whether substantial evidence supports the findings of fact and, if so, 'whether the findings in turn support the trial court's conclusions of law.'" *In re Marriage of Greene*, 97 Wn. App. 708, 714, 986 P.2d 144 (1999) (quoting *Org. to Preserve Agric. Lands v. Adams County*, 128 Wn.2d 869, 882, 913 P.2d 793 (1996)). "Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise." *Mowat Constr. Co. v. Dep't of Labor & Indus.*, 148 Wn. App. 920, 925, 201 P.3d 407 (2009). "The trial court's credibility determinations and its resolution of the truth from conflicting evidence will not be disturbed on appeal." *Bird v. Best Plumbing Group, LLC, 161 Wn. App. 510, 525, 260 P.3d 206 (2011) (citing Garofalo v. Commellini, 169 Wash. 704, 705, 13 P.2d 497 (1932))*. Moreover, in conducting our review, we view the evidence in the light most favorable to the prevailing party, here the Wehnerts. *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 342, 308 P.3d 791 (2013).

Contrary to the Primacios' argument, substantial evidence supports the trial court's determination that they caused a timber trespass to occur on the Wehnerts' property. Timber trespass is a statutory cause of action. The underlying statute, RCW 64.12.030, provides:

> Whenever any person shall cut down, girdle, or otherwise injure, or carry off any tree, including a Christmas tree as defined in RCW 76.48.020, timber, or shrub on the land of another person, or on the street or highway in front of any person's house, city or town lot, or cultivated grounds, or on the commons or public grounds of any city or town, or on the street or highway in front thereof, without lawful authority, in an action by the person, city, or town against the person committing the trespasses or any of them, any judgment for the

plaintiff shall be for treble the amount of damages claimed or assessed.

(Revisor's note omitted.) The resulting cause of action has been described as "a strict liability tort (despite its nominal similarity to trespass, which has historically been considered an intentional tort)" and thus "'does not depend on proof of negligence or intent to do harm.'" *Porter v. Kirkendoll*, 194 Wn.2d 194, 206, 449 P.3d 627 (2019) (quoting BLACK'S LAW DICTIONARY 1099 (11th ed. 2019)).

Addressing this claim, the trial court stated, "The evidence presented at trial, particularly the testimony of Daniel Wehnert, Angela Wehnert and the photographs and videos of the subject property demonstrate by a preponderance of the evidence that the timber and other shrub materials were removed, cut and damaged." We have reviewed the trial court record, including the Wehnerts' testimony and related exhibits (which includes several photographs and videos), and we agree with the Wehnerts that the evidence is sufficient "to persuade a fair-minded person of the truth of the declared premise." *Mowat*, 148 Wn. App. at 925. That is particularly true when we view the evidence in the light most favorable to the Wehnerts, as controlling case law requires. *Scott's Excavating,* 176 Wn. App. at 342 (quoted above).

The Primacios' argument on this point is self-defeating. They devote a single paragraph to this issue wherein they state, "The only evidence that the Wehnerts presented to support their claim that Mr. Primacio removed trees from their property was their own testimony." In so arguing, the Primacios fundamentally misunderstand the applicable standard of review, which as noted above is both limited and deferential. The trial court relied in particular on the

testimony of Daniel and Angela Wehnert, both of whom personally observed the subject property, and we accept the court's corresponding credibility determination. *Boot*, 89 Wn. App. at 791 (quoted above). And contrary to the Primacios' argument that the Wehnerts' testimony was uncorroborated, the trial court also relied on video and photographic evidence showing that the Primacios removed and damaged trees and shrubs within the Disputed Area. As the trial court also noted, "David Primacio did not dispute that he is the one who caused this damage." On this record, the Primacios' contrary argument fails.

Much the same is true regarding the Primacios' argument that the trial court erred in awarding damages totaling $159,930 (trebled from $53,310) for the value of lost timber. Brian Gilles, a certified arborist with the International Society of Arboriculture, prepared a detailed appraisal report describing his methodology, observations, and appraisal process. After utilizing the "trunk formula technique," within the "reproduction cost method," Gilles determined the "appraisal cost" of the lost and damaged plant materials to be $53,310. *Id.*; RP 54-55. Gilles also testified at trial regarding his analysis, and the Primacios declined to cross-examine him. Although the Primacios now claim there is insufficient evidence supporting Gilles' analysis, they once again ignore the applicable standard of review. Viewed favorably to the Wehnerts, Gilles' damages analysis is sufficient to persuade a fair-minded person that the value of the lost and damaged trees and shrubs is $53,310. Substantial evidence thus supports the trial court's corresponding award.

B

Turning to the trial court's award of attorney fees and expert witness costs, the Primacios argue the court (1) abused its discretion in failing to segregate

attorney fees related to the adverse possession, timber trespass, and trespass claims, (2) erred in concluding that their "bad faith actions" could support an award of attorney fees and expert witness costs, and (3) further erred by imposing contempt sanctions after the Primacios failed to pay the award of fees and costs by the prescribed deadline. We disagree with the first argument and agree, at least in part, with the second and third arguments.

1

Starting with the segregability issue, the trial court awarded fees under RCW 7.28.083(3), which provides:

> The prevailing party in an action asserting title to real property by adverse possession may request the court to award costs and reasonable attorneys' fees. The court may award all or a portion of costs and reasonable attorneys' fees to the prevailing party if, after considering all the facts, the court determines such an award is equitable and just.

While the trial court did not specifically state that an award of attorney fees was "equitable and just" in this case, that finding is inherent in the fact that the trial court made the award pursuant to RCW 7.28.083(3).

The Primacios do not dispute that the Wehnerts are the prevailing party with regard to the adverse possession claim and that RCW 7.28.083(3) therefore authorizes an award of fees on that claim. Rather, they claim that the court should have segregated (and thus denied) attorney fees related to the timber trespass and trespass claims. Although the timber trespass claim is a non-fee claim and the Wehnerts did not prevail on their trespass claim, our courts have repeatedly recognized that "segregation of fees is not necessary where 'the trial court finds the claims to be so related that no reasonable segregation of . . . claims can be

made." *King County. v. Vinci Constr. Grands Projets/Parsons RCI/Frontier-Kemper, JV*, 188 Wn.2d 618, 632, 398 P.3d 1093 (2017) (quoting *Hume v. Am. Disposal Co.*, 124 Wn.2d 656, 673, 880 P.2d 988 (1994)). "We review the trial court's determination of whether segregation is possible for abuse of discretion." *Id.*

Consistent with *King County* and other similar cases, the trial court here determined "[t]hat the attorney's fees should not be segregated because the adverse possession and timber trespass claims involved a common core of facts and are interrelated." The court did not abuse its discretion in so ruling. To establish their timber trespass claim, the Wehnerts were required to establish that the Primacios cut down, girdled, otherwise injured, or carried off any tree on their property. RCW 64.12.030. To make that showing, the Wehnerts first had to establish that they were the lawful owners of the Disputed Area. They established that point by adverse possession. Thus, if the Wehnerts did not succeed in establishing their adverse possession claim, their timber trespass claim would have failed. Because such claims share a "common core of facts"—relating to ownership of the Disputed Area—and are thus interrelated, segregation is not required. *See King County.*, 188 Wn.2d at 634 (trial court did not abuse its discretion in finding attorney fees could not be segregated where "King County could prevail in asserting coverage under the performance bond only by defeating VPFK's defenses against breach").

On this record, the Primacios' reliance on *Travis v. Washington Horse Breeders Ass'n*, 111 Wn.2d 396, 759 P.2d 418 (1988), is misplaced. The trial court in *Travis* awarded attorney fees to a successful Consumer Protection Act (CPA)

claimant under RCW 19.86.090. In remanding the matter to properly segregate attorney fees, our Supreme Court stated that the trial court "must separate the time spent on those theories essential to the CPA and the time spent on legal theories relating to the other causes of action." *Id.* at 411. Here, the adverse possession claim was essential to the timber trespass claim. Accordingly, applying the rule set forth in *Travis* (also set forth more recently in *King County*), the trial court did not abuse its discretion when it did not segregate attorney fees related to those claims.

The same analysis applies to attorney fees related to the Wehnerts' trespass claim. Here too, the trial court found "that [the Wehnerts'] trespass claim related to [the Primacios'] dogs was only a nominal part of the case and segregation of fees related to said claim is not possible, because they are woven into the preparation of the entire case." The Primacios devote a single paragraph of their opening brief to this issue, and their argument is unpersuasive. They claim, for example, that Daniel Wehnert spent a "considerable portion of his time on the witness stand testifying about the trespass claim" and there were "three photographic exhibits specifically devoted to the issue." Having reviewed the record, we agree with the trial court that this was a "nominal part of the case." Indeed, far from being "considerable," the referenced testimony is limited to five pages of the trial transcript. Additionally, the Primacios fail to provide any reasoned analysis regarding the trial court's ruling that the two claims are "woven into the preparation of the entire case." The Primacios thus fail to establish an abuse of discretion regarding segregation of attorney fees.

2

In addition to awarding attorney fees under RCW 7.28.083(3), the trial court also concluded "that the [Primacios'] bad faith actions give rise to an equitable basis to award all of [the Wehnerts'] attorney's fees & expert costs in addition to statutory costs." While we need not reach that ruling to affirm the trial court's award of attorney fees (as the discussion in part II.B.1. above shows), it is the only basis identified by the trial court to award expert witness costs (totaling $26,219.73) in addition to statutory costs. We therefore address below whether the trial court erred in awarding attorney fees and expert witness costs on equitable grounds. Whether a recognized ground in equity authorizes such an award "is a legal question reviewed de novo." *Dalton M, LLC v. N. Cascade Tr. Servs., Inc.*, 2 Wn. 3d 36, 56, 534 P.3d 339 (2023).

Beyond the cursory ruling that is quoted in the preceding paragraph, the trial court did not specifically identify the alleged "bad faith actions" that are the purported basis for its fee award. In their response brief, the Wehnerts point to paragraphs 13, 14, 32, and 40 of the trial court's findings of fact, conclusions of law, and decision. There, the trial court recounted the Primacios' prelitigation conduct such as tearing down the Wehnerts' lights, cutting down trees and removing shrubs and stumps in the Disputed Area, interfering with the Wehnerts' enjoyment of their property, and causing emotional distress. Thus, the issue before this court is whether such *prelitigation* bad faith conduct can support an award of attorney fees.

On this issue, we can do no better than to repeat our Supreme Court's cogent analysis in *Dalton M*:

Washington courts have sometimes recited the existence of a "recognized ground in equity" for a prevailing party to recover attorney fees as costs based on the losing party's prelitigation bad faith conduct. *E.g., Kottsick*, 86 Wn.2d at 390, 545 P.2d 1[1]; *Pearsall-Stipek*, 136 Wn.2d at 267 n.6, 961 P.2d 343.[2] We have explained that this exception may apply where "'misconduct of a party *amounting to contempt of court* has caused the opposing party to incur counsel fees, or where a person retains possession of property *after a judicial determination* of the wrongful character of his possession, thus forcing the party wronged to the expense of further proceedings to recover possession or otherwise enforce his rights.'" *State ex rel. Macri v. City of Bremerton*, 8 Wash.2d 93, 105, 111 P.2d 612 (1941) (emphasis added) (citation omitted) (quoting *Guay v. Bhd. Bldg. Ass'n*, 87 N.H. 216, 221, 177 A. 409 (1935)). In a recent Court of Appeals case, Division One rejected the prevailing party's argument that it was entitled to attorney fees on this ground, emphasizing that "[p]relitigation bad faith is not available as an equitable basis for an award of attorney fees where the actions found to be taken in bad faith did not pose a threat to the authority of the court." *Greenbank*, 168 Wn. App. at 519.[3]

While numerous cases describe the prelitigation bad faith exception, we can find no case where this court has awarded (or affirmed) attorney fees on this ground. *See Miotke v. City of Spokane*, 101 Wn.2d 307, 338, 678 P.2d 803 (1984). And, in our recent decision in *Maytown*, we foreclosed the availability of this equitable ground altogether. 191 Wn.2d 392, 423 P.3d 223.[4] In that case, a mining company and the Port of Tacoma sued the State on numerous grounds, including tortious interference. That claim was based on the State forcing the plaintiffs to undergo nearly two years of administrative proceedings that appeared to be aimed at delaying the mining company's ability to begin business operations, even though it already had an approved permit. *Id*. at 399-419. The plaintiffs prevailed on their tortious interference claim and sought attorney fees based on that claim. We affirmed the decision of the trial court to deny attorney fees either as special damages or as costs under the prelitigation bad faith exception to the American rule. *Id*. at 443. In fact, we foreclosed the availability of attorney fees as costs for prelitigation bad faith conduct in general. *Id*.

---

[1] The complete citation for this case is *Pub. Util. Dist. No. 1 of Snohomish County v. Kottsick*, 86 Wn.2d 388, 545 P.2d 1 (1976).

[2] The complete citation for this case is *In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 961 P.2d 343 (1998).

[3] The complete citation for this case is *Greenbank Beach & Boat Club, Inc. v. Bunney*, 168 Wn. App. 517, 280 P.3d 1133 (2012).

[4] The complete citation for this case is *Maytown Sand & Gravel, LLC v. Thurston County*, 191 Wn.2d 392, 423 P.3d 223 (2018).

First, we explained that there is a narrow set of claims that can form the basis for awards of attorney fees as special damages and noted that the plaintiffs did not prevail on any such action. *Id*. at 442-43 (citing *Rorvig*, 123 Wn.2d at 862[5]). We then examined whether the plaintiffs should receive attorney fees as costs based on the prelitigation bad faith conduct of the defendant. We explained that the answer was no: "to the extent such prelitigation attorney fees are recoverable, they are recoverable only as *damages* under some type of abuse of civil proceedings claim, not as *costs or sanctions* under the bad faith exception." *Id*. at 443. We further explained:

> The bad faith exception to the American rule arises out of a court's equitable power to regulate and manage the affairs of the court and the parties *before it*. Sanctioning parties for prelitigation conduct that occurred *before* the court was involved and *before* litigation was initiated exceeds the scope of that authority.

*Id*. (emphasis added) (citation omitted) (citing *Chambers*, 501 U.S. at 46[6]). We concluded that "[c]ompensating aggrieved parties for harm caused by malicious, prelitigation conduct fits more naturally within the meaning of damages and is *therefore limited to that context*." *Id*. (emphasis added).

Here, as in Maytown, prior to Dalton M initiating this litigation, the court had no power to "regulate and manage the affairs" of U.S. Bank regarding title to Parcel 0402. There had been no prior judicial determination regarding quiet title or slander of title that U.S. Bank was defying. At trial, Dalton M prevailed on claims for quiet title and slander of title. Dalton M properly requested attorney fees related to slander of title; Dalton M did not state or litigate a claim for attorney fees based on U.S. Bank's prelitigation bad faith conduct. The trial court's award of fees was properly based on the prevailing slander of title claim. But when the Court of Appeals reversed the slander of title judgment, it eliminated the only recognized equitable basis on which Dalton M could receive attorney fees as special damages.

*Dalton M*, 2 Wn.3d at 58-60. Based on this analysis, the Supreme Court reversed the court of appeals' award of attorney fees based on prelitigation bad faith conduct. *Id.* at 62.

---

[5] The complete citation for this case is *Rorvig v. Douglas*, 123 Wn.2d 854, 873 P.2d 492 (1994).
[6] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991).

The same analysis applies here. As noted, the only conduct that the Wehnerts claim supports the trial court's equitable fee award is the Primacios' prelitigation conduct. As our Supreme Court reiterated in *Dalton M*, sanctioning parties for prelitigation conduct exceeds the scope of the trial court's equitable power to regulate and manage the affairs of the court and the parties before it. *Id.* at 60. It necessarily follows that the trial court in this matter likewise erred, and exceeded its equitable power to regulate and manage the affairs of the court and the parties before it, in concluding "that the [Primacios'] bad faith actions give rise to an equitable basis to award all of [the Wehnerts'] attorney's fees & expert costs in addition to statutory costs."

The cases cited by the Wehnerts in support of the trial court's award are inapposite. While Division Two stated in *Gander v. Yeager*, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012), that "bad faith or misconduct of a party" is a "recognized equitable grounds sufficient to support an award of attorney fees as costs or damages," its decision is limited to fees incurred in "dissolving a wrongfully issued temporary injunction." *Id.* at 648. That did not occur here. The opinion in *Gander* also predates *Dalton M*, which is in any event controlling on this point. And while our Supreme Court recognized in *Panorama Village Condominium Owners Ass'n Board of Directors v. Allstate Insurance. Co.*, 144 Wn2d 130, 142, 26 P.3d 910 (2001), that reasonably necessary costs of litigation can be awarded on equitable grounds, the court's statement is limited to circumstances where a court awards litigation expenses as part of an equitable award of attorney fees. Because the trial court erred in awarding attorney fees based on prelitigation bad faith conduct, it likewise erred in awarding expert witness costs on this same basis.

- 13 -

3

Lastly, the trial court further erred (and abused its discretion) by imposing contempt sanctions based on the Primacios' failure to pay the award of attorney fees and expert witness costs within ten days.  This issue is governed by RCW 6.17.070, which states as follows:

> When any judgment of a court of this state requires the payment of money or the delivery of real or personal property, it may be enforced by execution.  When a judgment of a court of record requires the performance of any other act, a certified copy of the judgment may be served on the party against whom it is given or the person or officer who is required by the judgment or by law to obey the same, and a writ may be issued commanding the person or officer to obey or enforce the judgment.  Refusal to do so may be punished by the court as for contempt.

As the plain language of the statute makes clear, a judgment that requires the payment of money or delivery of property may be enforced by execution whereas a judgment that requires the performance of any other act may be punished by contempt.  Here, the trial court's fee award and supplemental judgment require the payment of money, not the performance of "any other act," and must therefore be remedied by execution or garnishment and not through contempt."[7]

The Wehnerts' contrary arguments are unpersuasive.  Rather than focus on Title 6 RCW, which is entitled "Enforcement of Judgments" and provides judgment creditors with tools they can use to collect on judgments, the Wehnerts rely on Title 7.21 RCW, which authorizes courts to impose sanctions for contempt of court

---

[7] In *In the Matter of the Marriage of Kathryn Violet Buss and Lee James Buss*, No. 87462-4-I (Wash. Ct. App. Jan. 20, 2026) (unpublished), http://www.courts.wa.gov/opinions/pdf/874624.pdf,  this court similarly held, "failure to pay a money judgment must generally be remedied by execution or garnishment and not through contempt."  Slip op. at 4 (citing RCW 6.17.070 and RCW 6.27.020(1)). Although *Buss* is an unpublished opinion, we may properly cite and discuss unpublished opinions where, as here, doing so is "necessary for a reasoned decision." GR 14.1(c).

where a "person has failed or refused to perform an act that is yet within the person's power to perform." RCW 7.21.030(2). To the extent these statutes conflict, "'every effort should be made to harmonize their respective provisions.'" *Icicle/Bunk, LLC v. Chelan County.*, 28 Wn. App. 2d 522, 528, 537 P.3d 321 (2023) (quoting Leson v. State, 72 Wn. App. 558, 563, 864 P.2d 384 (1993)). Harmonizing these statutory provisions here, the trial court erred when it awarded contempt sanctions, *contrary to RCW 6.17.070*, based on the Primacios' failure to pay a *monetary judgment* within ten days.

Affirmed in part, reversed in part.

Feldman, J.

WE CONCUR:

Díaz, J.

, ACJ